# United States Court of Appeals for the Federal Circuit

_____

**ROBERT M. SELLERS,**
*Claimant-Appellee*

**v.**

**ROBERT L. WILKIE, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellant*

_____

2019-1769

_____

Appeal from the United States Court of Appeals for Veterans Claims in No. 16-2993, Judge Mary J. Schoelen, Judge Michael P. Allen, Senior Judge Robert N. Davis.

_____

Decided: July 15, 2020

_____

KENNETH M. CARPENTER, Law Offices of Carpenter Chartered, Topeka, KS, argued for claimant-appellee. Also represented by JOHN F. CAMERON, Montgomery, AL.

DAVID PEHLKE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellant. Also represented by ETHAN P. DAVIS, MARTIN F. HOCKEY, JR., ROBERT EDWARD KIRSCHMAN, JR.; BRIAN D. GRIFFIN, JONATHAN KRISCH, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

BENJAMIN C. BLOCK, Covington & Burling LLP, Washington, DC, for amici curiae National Organization of Veterans' Advocates, Inc., National Veterans Legal Services Program. Also represented by ISAAC CHAIM BELFER, FRANK CRAIG BROOMELL, JR., JEFFREY HUBERMAN. Amicus curiae National Veterans Legal Services Program also represented by JOHN D. NILES, BARTON F. STICHMAN, National Veterans Legal Services Program, Washington, DC.

―――――――――――

Before DYK, CLEVENGER, and HUGHES, *Circuit Judges.*

CLEVENGER, *Circuit Judge.*

Robert M. Sellers served honorably in the U.S. Navy from April 1964 until February 1968, and in the U.S. Army from January 1981 to February 1996. Mr. Sellers currently suffers from major depressive disorder ("MDD"). As a practical matter, this case involves Mr. Sellers' attempt to establish an earlier effective date than the one currently assigned to him for the compensation he receives due to his current MDD condition.

Mr. Sellers has an effective date of September 18, 2009. He seeks an effective date of March 11, 1996, the date he filed a formal claim[1] seeking compensation for specifically identified injuries to his leg, knee, back, finger, and ears. In a space on his formal application labeled "Remarks," Mr. Sellers wrote "Request for s/c [service connection] for disabilities occurring during active duty service." J.A. 140. Mr. Sellers contends that the law in effect in 1996 requires his

―――――――――――

[1]    In VA parlance, a formal claim is one made on a particular form specified by the Secretary. As early as 1962, VA regulations referred to "Original claim" as "an initial formal application on a form prescribed by the Administrator. 38 C.F.R. 3.160(b) (1962).

remarks to be understood as a formal claim for compensation for his MDD, even though his claim in no way refers to MDD, and thus affords him the earlier effective date of his 1996 formal claim. The United States Court of Appeals for Veterans Claims ("Veterans Court") agreed that Mr. Sellers' claim based on MDD could suffice in the absence of any reference to that condition. *Sellers v. Wilkie*, 30 Vet. App. 157 (2018). The Secretary of Veterans Affairs challenges the Veterans Court's decision, arguing that a legally sufficient formal claim must identify, at least at a high level of generality, the current condition upon which the veteran's claim for benefits is based.[2] For the reasons set forth below, we agree with the Secretary. Accordingly, Mr. Sellers is not entitled to the earlier effective date he requests.

I

On September 18, 2009, Mr. Sellers filed an informal claim[3] with the Department of Veterans Affairs ("VA")

---

[2]    Whether a formal claim must refer at least generally to the condition on which a veteran's claim for compensation is based is no longer questionable. Since March 24, 2015, the VA's regulations require that a formal claim must provide "a description of any symptom(s) or medical condition(s) on which the benefit is based. . . ." 38 C.F.R. 3.160(a)(4).

[3]    Since as early as 1961, VA regulations allowed for informal claims, with an informal claim defined as "[a]ny communication or action, indicating an intent to apply for one or more benefits under the laws administered by the Veterans Administration, from a claimant. . . ." 38 C.F.R. 3.155(a) (1961). The 1961 regulation specified that an informal claim "must identify the benefit sought." *Id.* If no formal claim was of record, an application form for a formal claim was sent to the informal claimant for execution, and if an executed form was received by the Administrator

seeking compensation for a service-connected psychiatric disability, claimed as Post Traumatic Stress Disorder ("PTSD"). A VA regional office (RO) denied his claim in March 2011. But on May 13, 2011, following an examination for mental disorders at the VA medical center in Montgomery, Alabama, Mr. Sellers was diagnosed with "major depressive disorder, recurrent, moderate," and given a Global Assessment of Functioning (GAF) score of 50.[4]

After a number of additional medical examinations, and an appeal to the Board of Veterans Affairs ("BVA"), Mr. Sellers was granted service connection for MDD rated at

---

within 1 year from the date it was sent to the claimant, it was considered filed as of the date of receipt of the informal claim. *Id.* The purpose of informal claims was to assist in filing formal claims and to serve a placeholder role for an earlier effective date. Effective March 24, 2015, the VA abolished the concept of informal claim, and by regulation created an "intent to file" process. If a veteran demonstrates an intent to file by one of three methods delineated in the new regulations, *see* 38 C.F.R 3.155(b), the date any of the three methods is performed serves as the effective date for any formal application filed within one year from the date of the "intent to file" submission. In contrast to previous informal claims, an intent to file a claim does not require the claimant to "identify the benefit sought," *see* 79 Fed. Reg. at 57,665, but does require an identification of the general benefit sought (such as compensation versus pension). *See* 38 C.F.R. 3.155(b)(2) (2015); *Veterans Justice Group, LLC v. Sec'y of Veterans Affairs*, 818 F.3d 1336, 1342-43 (Fed. Cir. 2016).

[4] At this time, and later, Mr. Sellers was granted compensation for other service-connected injuries and disabilities. Since only his claim for an earlier effective date for his MDD is at stake in this case, we note but do not refer further to his other bases for compensation.

70%, with an effective date of September 18, 2009, the date
he filed his informal claim for service-connected psychiatric
disability. The BVA decision stated:

> The record shows that the VA received on Septem-
> ber 18, 2009, an informal claim for service connec-
> tion for psychiatric disability, claimed as PTSD. . .
> It is noted that, when a claimant makes a claim, he
> is seeking service connection for symptoms regard-
> less of how those symptoms are diagnosed or la-
> beled. *Clemons v. Shinseki*, 23 Vet. App. 1 (2009).

J.A. 37. The BVA further noted that the effective date of
any claim is the date of receipt of the claim or the date en-
titlement arose, whichever is later, citing 38 C.F.R. 3.400.
As September 18, 2009 is the later, it was deemed the ef-
fective date. The BVA observed "that [the] VA received no
claim (informal or otherwise) for service connection for any
psychiatric disability prior to September 19, 2009." J.A. 38.
With regard to Mr. Sellers' formal claim filed on March 11,
1996, the BVA noted that it "did not include any claim for
psychiatric disorder or problems that could be reasonably
construed as a claim for service connection for psychiatric
disability." J.A. 38.

Mr. Sellers appealed the BVA's denial of an earlier ef-
fective date for his MDD to the Veterans Court. In his brief
to the Veterans Court, Mr. Sellers faulted the BVA for
reading his 1996 formal claim as excluding any claim for
psychiatric disability. In addition to the several specific
bodily injuries named in his formal application, for which
he sought compensation, his formal claim also stated in
block 40[5] (entitled "Remarks"): "Request s/c [service

---

[5]    In VA Form 21-526, block 40 states: "REMARKS
(Identify your statements by their applicable item number.
If additional space is required, attach separate sheet and
identify your remarks by their item number." J.A. 140.

connection] for disabilities occurring during active duty service." Mr. Sellers argued to the Veterans Court that this language in the veteran's pro se filing should be sympathetically read to require the VA to "grant all possible benefits." Mr. Sellers argued that this result is mandated the more so because at the time the VA ruled on the formal application for benefits, it had "obtained his service medical records and was aware of his in-service medical treatment for his chronic mental disability." J.A. 70. Mr. Sellers' brief to the Veterans Court cited numerous VA medical records which referred to medical treatment for mental disorders. Because his medical records revealed in-service treatment for mental disorders before his formal claim was filed, Mr. Sellers argued that his request in essence for "all possible benefits" in block 40 was sufficient to state a claim for psychiatric disability as of the date of his formal claim.

The Secretary responded to Mr. Sellers' brief to the Veterans Court, citing as the correct statement of the law the following language in *Brokowski v. Shinseki*, 23 Vet. App. 79, 84 (2009): "The essential requirements of any claim, whether formal or informal" are: "(1) an intent to apply for benefits, (2) an indication of the benefits sought, and (3) a communication in writing."[6] In particular, the

---

The purpose of block 40 is to allow amplification of information contained in other numbered blocks in the Form, such as blocks 17-19, in which Mr. Sellers provided information about his specifically claimed bodily injuries.

[6] In *Brokowski*, the veteran's 1994 claim for service-connected peripheral neuropathy was granted in 2002, with an effective date of February 15, 1994. The veteran had earlier filed a claim in January 1977 for anxiety and depression which made no reference to peripheral neuropathy, but which stated "[t]his is also a claim for service[ ] connection for all disabilities of record." *Brokowski*, 23 Vet.

Secretary emphasized that in *Brokowski*, the Veterans Court held that a claim for anxiety and depression that also requested service connection for "all disabilities of record" was insufficient to support a claim for peripheral neuropathy. Because Mr. Sellers' March 1996 filing made no reference to a claim for benefits related to a psychiatric condition and only requested benefits for "disabilities occurring during active duty service," the Secretary argued that this case is like *Brokowski*: Mr. Sellers' formal claim failed to meet the required test for identifying the benefits sought for a psychiatric condition, and thus could not earn an earlier effective date for Mr. Sellers' MDD.

After oral argument, the Veterans Court issued its opinion. *See Sellers v. Wilkie*, 30 Vet. App. 157 (2018). The Veterans Court first stated the position of the parties. Mr. Sellers contended that his general statement seeking service connection for disabilities occurring during active duty service, combined with the VA's possession of his service medical treatment records, sufficed to state a formal claim for MDD. In practical terms, his March 1996 formal claim purportedly entitled him to his requested earlier effective date for his MDD rated at 70%. The Secretary's view was that Mr. Sellers failed to initiate a formal claim for MDD because the information in block 40 of the form provided no information from which an MDD claim could be deduced and the formal claim otherwise made no reference to MDD.

The Veterans Court agreed with the Secretary that "a general statement of intent to seek benefits for unspecified disabilities standing alone is insufficient to constitute a

---

App. at 82. Because the veteran's medical records as of 1978 contained evidence of vascular disorder, the veteran argued that his request for all disabilities of record sufficed to state a claim for peripheral neuropathy and thus entitled him to an effective date of January 1977 for his service-connected peripheral neuropathy disability.

claim." *Sellers*, 30 Vet. App. at 163. Nonetheless, the Veterans Court faulted the Secretary for missing "a crucial additional factor present here," namely that at the time the RO rejected Mr. Sellers' formal claim, his medical records in the RO's possession revealed multiple occasions on which he had received treatment for psychiatric conditions, and an undisputed in-service diagnosis of a psychiatric condition. *Id.* In the face of *Brokowski*, and with no citation to other authority, the Veterans Court held that Mr. Sellers' general statement in block 40, coupled with the VA's possession of his medical records showing previous treatment for a psychiatric condition, may have sufficed to qualify the March 1996 writing as having initiated a formal claim for MDD, subject to one condition. The condition requiring satisfaction to validate the formal claim is that Mr. Sellers' in-service psychiatric diagnosis be "reasonably identifiable" from the medical records before the RO at the time it considered his claim. In sum, the court stated: "We hold that a general statement of intent to seek benefits, coupled with reasonably identifiable in service medical diagnosis reflected in service treatment records in VA's possession prior to the RO making a decision on the claim may be sufficient to constitute a claim for benefits." *Id.* at 161.

The Veterans Court noted that the determination by the RO adjudicator of whether a compensable condition is "reasonably identifiable" from medical records, with only a completely unspecified general request for benefits to go on, may be difficult. Noting that medical records can be voluminous, and may perhaps relate to several conditions, the Veterans Court specified that the "fact finder must determine, based on the totality of the service medical record, both qualitatively and quantitatively, whether the condition at issue would be sufficiently apparent to an adjudicator." *Id.* at 163. Because the "reasonably identifiable" question in any case is one of fact, which if in dispute would be decided initially by the BVA, the Veterans Court offered extensive guidance to the BVA:

To assist the Board in this endeavor, we provide the following thoughts on the types of factors that may be relevant to the Board's inquiry. These are not the only factors the Board may find helpful as it makes its assessment on this factual question. They are merely illustrations of factors that may be relevant to the Board's assessment. Qualitatively, for example, service medical records might contain many notes of conditions ranging from descriptions of trivial conditions (a hangnail) to full-blown diagnoses of significant illnesses (PTSD). And the record might describe certain conditions in great detail or, in contrast, in only a passing manner. Or, for example, medical records could contain vague complaints of symptoms regarding a condition but no formal diagnosis.

Quantitatively, the sheer volume of medical records may potentially be a factor in determining whether a condition would have been reasonably identifiable to a VA adjudicator. For example, the Board could decide that a single diagnosis reflected in a single page of a 2,000 page service record is not reasonably identifiable.

*Id.* at 163-64.

As the "reasonably identifiable" issue had not been decided in this case, the Veterans Court remanded the case to the BVA for it to examine the relevant medical records and decide if Mr. Sellers' MDD claim was reasonably identifiable at the time he filed his formal claim. In *Brokowski*, the Veterans Court held that the veteran's request for "all disabilities of record" could not be used as "a pleading device to require the Secretary to conduct an unguided safari through the record to identify all conditions for which the veteran may possibly be able to assert entitlement to a claim for disability compensation." 23 Vet. App. at 89. But in this case, the Veterans Court stated that:

> [O]ur holding here is a narrow one.  Only records
> containing diagnoses that are reasonably identifia-
> ble from a review of the record may otherwise cure
> an insufficient general statement of intent to seek
> benefits.  To continue *Brokowski's* metaphor, we
> caution that VA at most must participate in a fully
> guided safari.

*Sellers*, 30 Vet. App. at 164.

To be clear, the Veterans Court did not decide that Mr.
Sellers filed a sufficient formal claim for a psychiatric dis-
ability in March 1996.  Instead, the Veterans Court created
a new legal test for determination of whether a general
statement of intent to seek benefits for unspecified disabil-
ities will suffice as a sufficient formal claim.  The Secretary
filed a motion for panel reconsideration or *en banc* review,
arguing that the panel decision is barred by governing stat-
utes and regulations.  The panel denied reconsideration, *en
banc* review was denied, and judgment was entered on Jan-
uary 30, 2019.  The Secretary timely appealed to this court.

II

We have jurisdiction over this appeal under 38 U.S.C.
7292, which generally restricts our jurisdiction to final de-
cisions of the Veterans Court.   Because the Veterans
Court's decision is not final, we must determine whether
this case satisfies the three-part test set forth in *Williams
v. Principi*, 275 F.3d 1361 (Fed. Cir. 2002), which deter-
mines whether a non-final Veterans Court decision is none-
theless within our statutory jurisdiction.  Jurisdiction will
lie in such a case if all three parts of the test are met: (1)
there is a clear and final decision of a legal issue, separate
from the remand proceedings, that will directly govern the
remand proceedings, or if reversed, would render the re-
mand proceedings unnecessary; (2) the resolution of the le-
gal issue adversely affects the party seeking judicial
review; and (3) there is a substantial risk that the remand
proceeding may moot the issue.  *Id*. at 1364.

This case satisfies the *Williams* test.  The Veterans Court decision created a clear rule of law that will govern the remand proceeding, and remand proceedings would be unnecessary were we to reject that clear rule of law.  The contested clear rule of law adversely affects the Secretary because it would change the law to require formal claims to proceed notwithstanding the absence of any identifiable sickness, disease, or injuries reasonably identified in the written claim.  Finally, there is a substantial risk that the BVA may on remand find a reasonably identifiable timely diagnosis of a psychiatric condition in Mr. Sellers' medical record.  Such a finding would moot judicial review of the contested rule of law in this case, because the Secretary cannot appeal BVA decisions favorable to the veteran to the Veterans Court.  *Smith v. Nicholson*, 451 F.3d 1344, 1348 (Fed. Cir. 2006) (noting that 38 U.S.C. 7252(a) precludes the Secretary from appealing a BVA decision).

## III

The Veterans Court held that a legally sufficient formal claim can be stated despite the absence of any statement in the claim that could be sympathetically understood to identify a sickness, disease, or injury for which benefits are sought.  The parties address that holding from opposite positions.

The Secretary challenges the Veterans Court's holding as legally incorrect.  He argues that relevant statutes and regulations impose a duty on the veteran to identify the sickness, disease, or injury for which benefits are sought.  Pointing to both its longstanding practice and the precedential holdings of this court deciding the sufficiency of informal claims, the Secretary states that the level of specificity required to identify a sickness, disease, or injury is minimal.  A veteran need not refer explicitly to the name of an illness, injury, or condition.  Identifying a condition even at a high level of generality will suffice.  Identifying, for example, a leg injury, memory loss, or eye problems

would satisfy the specificity test. And even if the words stated do not name a condition, facts stated in the claim can be sympathetically understood to support a claim. A leading example comes from *Roberson v. Principi*, 251 F.3d 1378 (Fed. Cir. 2001). In that case, the veteran's claim included evidence of a medical disability, and of unemployability, and asked for the highest possible rating. That evidence was held sufficient to support a rating for total disability based on individual unemployability. The Secretary also cites *Shea v. Wilkie*, 926 F.3d 1362 (Fed. Cir. 2019) as another instance in which a claim lacking specific reference to PTSD was held sufficient. In that case, in contrast to the situation here, the veteran's claim pointed to specific medical records in which the veteran's psychiatric condition was noted. The Secretary emphasizes that while the VA's claim assessment process requires, consistent with our binding precedent, that veterans' claims be read sympathetically, the condition on which the claim is based must be identifiable from within the claim.

As legal support for necessary identification of the condition for which benefits are sought, the Secretary begins with 38 U.S.C. 501(a)(2), in which Congress granted the VA authority to prescribe all necessary or appropriate rules and regulations regarding "the forms of applications by claimants." *Mansfield v. Peake*, 525 F.3d 1312, 1317 (Fed. Cir. 2008) ("Congress has provided the VA with authority to establish requirements for 'claims' for veterans benefits.") In addition, *Mansfield* held that "[a] specific claim in the form prescribed by the Secretary . . . must be filed in order for benefits to be paid or furnished to any individual under the laws administered by the Secretary. 38 U.S.C. 5101(a)(2000)." *Id.*; *see also id.* at 1317 n.9 (citing 38 U.S.C. 3001(a) (1988)). The statutory command of section 5101(a) is repeated in the pertinent regulation, 38 C.F.R. 3.151(a). Further, the veteran is obligated to "present and support" his claim. 38 U.S. C. 5107(a).

As required under the statutes and regulations, the veterans' claim must be *on* the VA's prescribed form, and the claim must "contain[] specified information . . . as called for by the blocks on the application form." *Fleshman v. West*, 138 F.3d 1429, 1431-32 (Fed. Cir. 1988); *see also Rodriguez v. West*, 189 F.3d 1351, 1353 (Fed. Cir. 1999) (a claimant must "file a form *providing specified information* that the Secretary has adopted.") (emphasis added). Since at least 1944, the prescribed formal claim application form has been a variation of Form 526. In this case, the prescribed form was 21-526 (Apr. 1993), and that form requires claimants to identify in block 17 the "nature of sickness, disease or injuries for which this claim is made."[7]

As noted at the start of this opinion, the VA in September 2014, after notice and comment rulemaking, substantially revised the claim initiation process, through regulations effective March 24, 2015. The validity of those new regulations was sustained, over challenge, in *Veterans Justice Group, LLC v. Sec'y of Veterans Affairs*, 818 F.3d 1336 (Fed. Cir. 2016) ("VJG"). The Secretary argues that *VJG* is relevant to our decision in this case.[8] We agree.

---

[7]    When Mr. Sellers filed his formal claim, 38 C.F.R. 3.1(p) defined the term "claim" as "(p) "Claim" – "Application" means a formal or informal communication in writing requesting a determination of entitlement or evidencing a belief in entitlement, to a benefit." 38 C.F.R. 3.1(p) (1996). Neither party argues that this definition answers the question of the degree of specificity required of a formal claim. The current regulation defines "initial claim" as a "any complete claim" and the "first initial claim" being further defined as an "original" claim. A "complete claim" now requires "a description of any symptom(s) or medical condition(s) on which the benefit is based…."

[8]    Mr. Sellers argues that *VJG* did not consider the Secretary's position on claim identification, because the

In *VJG*, the lawfulness of 38 C.F.R. 3.160 was chal-
lenged as an unreasonable interpretation of 38 U.S.C.
5107(a), which provides that "a claimant has the responsi-
bility to present and support a claim for benefits."  The in-
terpretation question arose from two subparts of section
3.160, which were viewed by the challengers as relieving
the Secretary from the duty to develop claims unrelated to
the actual claims presented by the veteran.  Those subparts
provide that a complete claim "must identify the benefit
sought,"  3.160(a)(3), and contain "a description of any
symptom(s) or medical condition(s) on which the benefit is
based. . .,"  3.160(a)(4).  The challengers argued that under
those terms, the VA would not be required to "adjudicate
benefits for any medical condition that is not specifically
identified and that [the] VA deems 'unrelated to those par-
ticular claims' – no  matter how apparent the condition is
on the face of the record."  *VJG*, 818 F.3d at 1355.  Thus
understood, the challengers argued the regulations were
unreasonable as in conflict with the Secretary's duty to
"consider all information and lay and medical evidence of
record in a case."  *Id.* at 1356 (quoting 38 U.S.C. 5107(b)).
This court responded that section 5107(b) ensures consid-
eration of all "relevant" evidence but does not answer the
question of whether the Secretary is obligated to develop
evidence outside the scope of a pending claim.  *Id.*  Treating
that question as one raised under the first step in the

opinion does not use the words "claim" and "identification"
together, and hence the case is not relevant to this case.  As
discussed below, Mr. Sellers is wrong.  The *VJG* decision is
highly relevant to this case.  One of the challengers in *VJG*,
National Organization of Veterans' Advocates, Inc., filed
an *amici curiae* brief in this case, advocating affirmance of
the Veterans Court's decision.  Notably, its brief does not
take issue with the Secretary's interpretation of and reli-
ance on our decision in *VJG*.

*Chevron* analysis, the court sustained the validity of 3.160(a)(3)-(4):

> We find the challenged portions of 38 C.F.R. 3.160(a)(3)-(4) . . . reflect a reasonable interpretation of the statute. In fact, the regulations do not substantially alter the VA's general practice of identifying and adjudicating issues and claims that logically relate to the claim pending before the VA. *See* Final Rule, 79 Fed. Reg. at 57,672 ("Although the rule requires claimants to specify the symptoms or conditions on which their claims are based and the benefits they seek, it generally would not preclude the VA from identifying, addressing, and adjudicating related matters that are reasonably raised by the evidence of record which the claimant may not have anticipated or claimed.").

*Id.*

The regulations sustained in *VJG*, effective in 2015, do not apply to this case, but those regulations do not substantially differ from the regulations that do apply to this case. The statute at question in *VJG*, 38 U.S.C. 5107(a), burdens the veteran with the obligation to "present and support a claim." The version of the same statute in effect at the time Mr. Sellers submitted his formal claim imposed on the veteran the same duty to present and support his claim.[9] *See Epps v. Gober*, 126 F.3d 1464, 1468 (Fed. Cir. 1997).

---

[9]    The version of Section 5107(a) applicable in *Epps* and in 1996, specified that a claimant "shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." 38 U.S.C. 5107(a) (1996). The requirement of a well-grounded claim has since been abolished, but to establish a well-grounded claim at least required

We agree with the Secretary that the relevant statutes, regulations, and judicial precedent require that a veteran's legally sufficient claim provide information, even at "a high level of generality," 818 F.3d at 1356, to identify the sickness, disease, or injury for which benefits are sought.

Mr. Sellers' argument, in support of the Veterans Court's test, and in spite of the relevant statutes, regulations, and judicial precedent discussed above, that "[t]here is no claim identification requirement when a claimant has filed a complete claim on a prescribed VA form," Appellee's Br. at 13, is unconvincing. According to Mr. Sellers, a formal claim specifying at least one identified condition for which benefits are sought invokes the Secretary's duty to assist, not only to fully develop the specified condition but also to search the veteran's records to identify and fully develop any additional claim the record may support.[10] Thus, according to Mr. Sellers, the law requiring some degree of identification in a claim of the sickness, disease, or injury for which benefits is sought is "unavailing," Appellee Br. at 15, and "invalid," Appellee Br. at 18, because it "is completely at odds," *id.*, with the Secretary's statutory duty to assist the veteran in developing all claims the record may support.[11]

---

identification of some condition on which the claim was based. *Epps*, 126 F.3d at 1468.

[10] Mr. Sellers does not argue that his 1996 form discloses his MDD.

[11] At the time Mr. Sellers filed his formal claim in 1996, the Secretary's duty to assist veterans was stated in two regulations, 38 C.F.R. 3.159(a) (1996), entitled Department of Veterans Affairs assistance in developing claims ("[The Secretary] shall assist a claimant in developing the facts pertinent to his or her claim"), and 38 C.F.R. 3.103(a) (1996), entitled Procedural due process and other rights ("[I]t is the obligation of VA to assist a claimant in

The Secretary's duty to assist is not untethered. At the time Mr. Sellers filed his formal claim, the Secretary's duty to assist was triggered by receipt of a legally sufficient claim. *Epps*, 126 F.3d at 1469. The same is true today; the Secretary's duty to assist begins upon receipt of a formal claim that identifies the medical condition for which benefits are sought. *See* 38 C.F.R 3.159(a)(3). This triggers the Secretary's duty to obtain the veteran's medical records, *see* 38 C.F.R 3.159(c)(2)–(3), 38 U.S.C. 5103A(c)(1)(A), and then to develop fully the stated claim. Until the Secretary comprehends the current condition on which the claim is based, the Secretary does not know where to begin to develop the claim to its optimum. We reject Mr. Sellers' view that the Secretary's requirement that a formal claim must identify the condition for which benefits are sought is fatally inconsistent with the Secretary's duty to assist the veteran. The former is necessary to initiate the latter.

---

developing the facts pertinent to the claim"). In 1996, 38 U.S.C. 5107(a) required the VA to assist a claimant "in developing the facts pertinent to the claim." *See Epps v. Gober*, 126 F.3d 1464, 1469 (Fed. Cir. 1997) (no duty to assist under section 5107 until claimant presents a proper claim). Mr. Sellers also cites the statutory duty to assist, 38 U.S.C. 5103A, enacted in 2000. Subsection (a) of the statute states that "[t]he Secretary shall make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate the claimant' claim for a benefit under a law administered by the Secretary." Although the language of section 5103A states the Secretary's duty to assist in different words than in previous regulations, the nature of the duty is the same: "to fully and sympathetically develop the veteran's claim to its optimum before deciding it on its merits." *Hodge v. West*, 155 F.3d. 1356, 1362 (Fed. Cir. 1998); *see also Roberson v. Principi*, 251 F.3d 1378, 1384 (Fed. Cir. 2001) (duty to develop the veteran's *claim*, citing *Hodge*).

IV

For the reasons set forth above, we hold that the Veterans Court formulated an incorrect legal test for determining if Mr. Sellers is entitled to an earlier effective date for his MDD condition.  Under the correct test, a veteran's formal claim is required to identify the sickness, disease, or injuries for which compensation is sought, at least at a high level of generality.  This is the same test as we have applied in evaluating the sufficiency of informal claims. *See, e.g.*, *Shea*, 926 F.3d at 1362; *Roberson*, 251 F.3d at 1384.  It is undisputed as a matter of fact that Mr. Sellers fails this test.   For that reason, it is appropriate for this court to hold that Mr. Sellers is not entitled to an earlier effective date based on his 1996 formal claim.  *See Robinson v. O'Rourke*, 891 F.3d 976, 979 (Fed. Cir. 2018) ("[W]here adoption of a particular legal standard dictates the outcome of a case based on undisputed facts, we may address that issue as a question of law.") (quoting *Kelly v. Nicholson*, 463 F.3d 1349, 1352-53 (Fed. Cir. 2006)); *Reeves v. Shinseki*, 682 F.3d 988, 992 (Fed. Cir. 2012); *Comer v. Peake*, 552 F.3d 1362, 1366 (Fed. Cir. 2009); *Groves v. Peake*, 524 F.3d 1306, 1309-10 (Fed. Cir. 2008) (reversing the Veterans Court and remanding for entry of judgment where application of correct law dictates outcome of a veteran's claim).

CONCLUSION

Because Mr. Sellers cannot prevail in his request for an earlier effective date for his MDD condition based on his 1996 formal application, we reverse the decision of the Veterans Court in this case, and remand to the Veterans Court for entry of judgment against Mr. Sellers.

**REVERSED AND REMANDED**

COSTS

The parties shall bear their own costs.