# United States Court of Appeals for the Federal Circuit

---

**DAVID G. MURPHY,**
*Claimant-Appellant*

**v.**

**ROBERT WILKIE, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2019-2064

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 17-3080, Judge Michael P. Allen.

---

Decided: December 21, 2020

---

CHRISTIAN ARTHUR MCTARNAGHAN, Chisholm Chisholm & Kilpatrick, Providence, RI, argued for claimant-appellant. Also represented by APRIL DONAHOWER, ZACHARY STOLZ, CHRISTOPHER J. CLAY; BARBARA J. COOK, Barbara J. Cook, Attorney at Law, Cincinnati, OH.

SHARI A. ROSE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by JEFFREY B. CLARK, MARTIN F. HOCKEY, JR., ROBERT EDWARD KIRSCHMAN, JR.; BRIAN D. GRIFFIN, DEREK

SCADDEN, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

————————————

Before LOURIE, CLEVENGER, and CHEN, *Circuit Judges*.

CHEN, *Circuit Judge*.

David G. Murphy, a veteran of the United States Army, appeals a decision from the Court of Appeals for Veterans Claims (Veterans Court) denying his claim for disability benefits. Mr. Murphy argues that the Veterans Court erred in determining that the Board of Veterans' Appeals (Board) lacked jurisdiction over his claim for disability benefits due to his schizophrenia. We *affirm*.

## BACKGROUND

Mr. Murphy served in the United States Army from December 1971 to February 1974. Since his separation from service, Mr. Murphy has suffered various conditions for which he has sought disability benefits from the Department of Veterans Affairs (VA). He first sought such relief from a VA regional office (RO) in February 2003 for post-traumatic stress disorder (PTSD); the RO denied this claim because Mr. Murphy lacked a PTSD diagnosis. *Murphy v. Wilkie*, No. 17-3080, 2019 WL 1029407, at *1 (Vet. App. Mar. 5, 2019). This decision became final. Though he lacked a PTSD diagnosis, a private doctor had diagnosed Mr. Murphy with paranoid type schizophrenia in 1982. *Id.* In October 2006, Mr. Murphy submitted another claim to the RO for various disabilities, including schizophrenia with anxiety, depression, and mood swings. *Id.* He also requested that the RO reopen his claim for PTSD. *Id.* The RO denied the claim for schizophrenia for failure to show nexus for service connection and declined to reopen the claim for PTSD for lack of material evidence. *Id.* From 2007 to 2012, the RO denied multiple requests by Mr. Murphy to reopen his claims for schizophrenia and PTSD,

sometimes denying them separately and sometimes deny-ing them together.  *Id.*[1]

The claim at issue in this appeal involves a request to reopen filed by Mr. Murphy in February 2012 (2012 RTR). In this filing, Mr. Murphy stated, "Please take action to consider the following: Entitlement to service connection for PTSD," J.A. 149, and under the section entitled "Reo-pening of previously denied disability," *id.* at 150 (capitali-zation removed), Mr. Murphy listed only "PTSD," *id.*  In adjudicating this claim, the VA administered a medical ex-amination to Mr. Murphy in which the physician found no PTSD diagnosis but did note a diagnosis for schizophrenia. *Murphy*, 2019 WL 1029407, at *2.  The RO therefore denied Mr. Murphy's request to reopen his PTSD claim because he lacked a PTSD diagnosis.

In December 2012, Mr. Murphy filed a Notice of Disa-greement (NOD) with the RO that contained a cover page stating that he disagreed with the RO's decision on his "[e]ntitlement to service connection for post-traumatic stress disorder," J.A. 179, and a handwritten attachment in which Mr. Murphy mentions "schizophrenia" and "PTSD" multiple times, *see* J.A. 180–81.  In January 2013, the RO filed its Statement of the Case (SOC) and Mr. Mur-phy filed his appeal Form 9 and accompanying statement shortly after.  *Murphy*, 2019 WL 1029407, at *2.  The Form 9 included numerous mentions of both "PTSD" and "schizophrenia," J.A. 203–09, like Mr. Murphy's NOD, and specifically on the cover sheet, Mr. Murphy mentions that

[1]    In August/September 2007 and September 2008, Mr. Murphy underwent two VA medical examinations. *Murphy*, 2019 WL 1029407, at *1.  Mr. Murphy argued to the Veterans Court that this evidence was never addressed by the VA.  *Id.*  If this contention is true, nothing in our decision today precludes Mr. Murphy from submitting a new request to reopen to the VA citing this evidence.

he is seeking to appeal his "PTSD/Schizo-Affective Bipolar Type Issues," *id.* at 203. Upon receipt of the Form 9, the RO determined in February 2014 that, in addition to seeking appeal of the RO's denial of his 2012 RTR for his PTSD claim, Mr. Murphy was also seeking, through his Form 9, to reopen his previously denied benefits claim for schizophrenia. The RO, however, denied this request to reopen Mr. Murphy's schizophrenia claim in July 2014 for lack of new and material evidence. *Murphy*, 2019 WL 1029407, at *3. Mr. Murphy did not appeal this denial. *Id.*

The Board heard testimony for Mr. Murphy's PTSD appeal in September 2014, and in a February 2015 decision, the Board remanded the PTSD claim for further development. *Id.* In May 2015, the RO maintained its denial and this decision was then reviewed by the Board on appeal. *Id.* In denying this appeal, the Board explained the following with regard to Mr. Murphy's schizophrenia claim:

> The Board notes that generally the scope of a claim of service connection for a specific psychiatric entity (here, PTSD) encompasses all psychiatric entities shown, however diagnosed. *Clemons v. Shinseki*, 23 Vet. App. 1 (2009). However, prior final rating decisions separately denied service connection for psychiatric disabilities other than PTSD, and such other psychiatric disabilities [like Mr. Murphy's schizophrenia] are not the subject of the instant claim. A July 2014 rating decision declined to reopen a claim of service connection for schizophrenia with anxiety, depression, and mood swings; the Veteran did not file a notice of disagreement with that rating decision, and that matter is not before the Board.

J.A. 259.

Mr. Murphy appealed the Board's decision to the Veterans Court, arguing that the Board should have considered his schizophrenia claim. The Veterans Court

concluded that "[t]he Board clearly and appropriately attempted to police its jurisdiction." *Murphy*, 2019 WL 1029407, at \*3 (citation omitted). Primarily, the Veterans Court reasoned that *Clemons*, which it characterized as "prevent[ing the] VA from denying a claim solely because the claimant incorrectly labeled an existing underlying condition that [the] VA would have discovered with further developing the claim," *id.* at \*5, does not apply because "*Clemons* itself draws clear distinctions between determining the scope of claims in the context of initial claims versus that of reopened claims," *id.* (citing *Clemons*, 23 Vet. App. at 7–9). Because Mr. Murphy's claim was a request to reopen, as opposed to an initial claim, the Veterans Court determined that the reasoning of *Boggs v. Peake*, 520 F.3d 1330 (Fed. Cir. 2008) applied. *Id.* Applying *Boggs*, the Veterans Court held that the Board correctly found it lacked jurisdiction over the schizophrenia claim, properly respecting the finality of previous agency decisions. *See id.* In an alternative holding, however, the Veterans Court applied *Clemons* and concluded that Mr. Murphy did not have "reasonable expectations of reopening both the schizophrenia and PTSD claims, at least not in February 2012" when he filed his request to reopen. *Id.* (citation omitted). The Veterans Court further explained, "In his February 2013 Form 9 and accompanying statement, [Mr. Murphy] demonstrated a convincing understanding of the schizophrenia and PTSD claims as separate claims and independent bases for service connection." *Id.* (citation omitted). Mr. Murphy appeals this decision to our court.[2]

---

[2]    Relevant to this appeal, though Mr. Murphy is now represented by counsel, he was not represented by counsel at the time of filing of his 2012 RTR and through much of the proceedings at the VA.

DISCUSSION

Our court has limited jurisdiction to review Veterans Court decisions. We "may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case." 38 U.S.C § 7292(d)(2). This court does, however, have jurisdiction to "decide all relevant questions of law, including interpreting constitutional and statutory provisions." § 7292(d)(1). We review legal determinations of the Veterans Court de novo. *Prenzler v. Derwinski*, 928 F.2d 392, 393 (Fed. Cir. 1991).

Mr. Murphy alleges legal error in the Veterans Court's decision to apply the reasoning of *Boggs* as opposed to *Clemons*. Appellant's Br. at 8. We agree with Mr. Murphy in this respect. But because the Veterans Court decision included an alternative holding based on the reasoning of *Clemons*, we affirm.

For sake of background, we begin with a brief overview of *Boggs* and *Clemons*, two opinions related to determining the scope of a veteran's claim. Mr. Boggs was a veteran who filed a claim for a left ear condition at the VA in 1955. *Boggs*, 520 F.3d at 1332. Following a diagnosis of conductive hearing loss, the RO denied the claim for lack of a nexus to service. *Id.* Almost 50 years later, Mr. Boggs filed another application for left ear hearing loss following a diagnosis of sensorineural hearing loss.[3] *Id.* Treating this claim as new and separate from the previous hearing loss claim, the RO denied this claim for lack of service connection. *Id.* On appeal, the Board found that the newly

---

[3]    Somewhat critical to the holding of *Boggs*, conductive hearing loss affects the middle or outer ear while sensorineural hearing loss affects the inner ear or auditory nerve; the two conditions also tend to result from different causes. *See* 520 F.3d at 1332–33.

diagnosed sensorineural hearing loss was cumulative of the conductive hearing loss, and therefore, considering the claims as one, it denied the second filing as a request to reopen finding no new and material evidence. *Id.* at 1333. The Veterans Court, on appeal from the Board, held that it was correct to treat the two diagnoses together as one claim as they both involved loss of hearing. *Id.* We reversed and remanded, reasoning that the "'factual basis' of a claim for purposes of 38 U.S.C. § 7104(b) is the veteran's [actual] disease or injury rather than the symptoms of the veteran's disease or injury." *Id.* at 1335. We explained that the proper reading of 38 U.S.C. § 7104(b), and the test thereunder, is that "claims based on separate and distinctly diagnosed diseases or injuries must be considered separate and distinct claims." *Id.* at 1336. As applied to Mr. Boggs's case, the Veterans Court was to determine on remand whether Mr. Boggs's hearing conditions were based upon different diagnosed diseases or injuries, *id.* at 1337, such that the second-filed claim would be considered new, and not subject to the more demanding new and material evidence standard of a request to reopen. Of note, we explained that by treating different diagnosed disease or injury claims distinctly, agency decisions are still afforded the respect of finality without unfairly precluding veterans from pursuing claims for distinct diseases or injuries. *Id.*

A year later, the Veterans Court decided *Clemons.* In that case, Mr. Clemons filed a benefits claim for mental disability, naming PTSD and listing myriad symptoms relating to his mental illness. *Clemons*, 23 Vet. App. at 4. The RO, and later the Board, denied Mr. Clemons's claim, explaining that he lacked a confirmed diagnosis of PTSD, even though the VA had diagnosed Mr. Clemons with another mental disorder, schizoid personality disorder. *Id.* The Veterans Court reversed on appeal, explaining that it essentially violated principles of fairness for the VA to limit Mr. Clemons's claim just to PTSD, because veterans usually lack medical expertise and are thus not competent to

diagnose themselves.  *See id.* at 5–6.  The Veterans Court concluded that the VA had to consider whether Mr. Clemons's schizoid personality disorder entitled him to benefits.  *Id.* at 6.  In reaching this holding, the Veterans Court explained that the VA must look to all possible diseases that the veteran could have reasonably expected to have included in his claim.  *Id.* at 5.  Particularly, the Veterans Court explained that in conducting this analysis, the VA "should construe a claim based on the reasonable expectations of the non-expert, self-represented claimant and the evidence developed in processing that claim."  *Id.*

The *Clemons* decision also included a discussion of *Boggs*:

> *Boggs* stands for the proposition that, if there is a final agency decision denying a claim based on a particular diagnosis, and subsequently a new and different diagnosis is submitted for [the] VA's consideration, the second diagnosis must be considered factually distinct from the first and must be considered to relate to a separate claim.

*Id.* at 8.  Further, the Veterans Court distinguished its holding in *Clemons* from concerns in *Boggs* for finality, by explaining that no finality concerns were involved in this case because no previous and final agency decision exists when the scope of an initial claim is involved, and "the advantages of treating separate diagnoses as separate claims in cases to reopen do not exist where separate diagnoses are rendered for the same reported symptoms during the initial processing of a claim for benefits."  *Id.* at 8.

In short, both *Boggs* and *Clemons* present principles to use in determining the scope of a veteran's claim.  *Boggs* teaches that when a veteran has two diagnoses with separate factual bases, these diagnoses should be treated as two separate claims, i.e., two requests for benefits that the VA must consider as independent bases for benefits.  *Boggs* does not require, however, that these claims maintain

separate procedural postures—separate claims can be considered by the VA in lockstep. *Clemons*, though not binding on this court, provides valuable guidance as to how the VA should interpret filings from a veteran: in accordance with the general pro-veteran canon, *Clemons* explains that the VA shall afford lenity to a veteran's filings that fail to enumerate precisely the disabilities included within the bounds of a claim. It further teaches that this goal is best accomplished by looking to the veteran's reasonable expectations in filing the claim and the evidence developed in processing that claim. Thus, while both *Boggs* and *Clemons* speak to claim scope, they are not inherently conflicting and do not address the same inquiries.

The Veterans Court erred when it concluded that Mr. Murphy's "reliance on *Clemons* is misplaced because *Clemons* itself draws clear distinctions between determining the scope of claims in the context of initial claims versus that of reopened claims." *Murphy*, 2019 WL 1029407, at *5 (citation omitted). Though we do not read *Clemons* to require such a holding, insofar as the Veterans Court here, and the government, *see* Appellee's Br. at 16, seek to limit the holding of *Clemons* by suggesting that it cannot apply to requests to reopen in view of *Boggs*, such a limitation is improper.

This conclusion aligns with the well-established principle that the VA is required "to fully and sympathetically develop the veteran's claim to its optimum before deciding it on the merits." *Hodge v. West*, 155 F.3d 1356, 1362 (Fed. Cir. 1998) (quoting H.R. Rep. No. 100-963, at 13 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5782, 5795). Our cases have understood this mandate to mean that "the VA must determine all potential claims raised by the evidence, applying all relevant laws and regulations, regardless of [the claim's label]," *Roberson v. Principi*, 251 F.3d 1378, 1384 (Fed. Cir. 2001), and we have held that such a requirement extends to all pro se pleadings and filings submitted to the VA, *see Szemraj v. Principi,*, 357 F.3d 1370, 1373 (Fed. Cir. 2004);

*see also Andrews v. Nicholson*, 421 F.3d 1278, 1282 (Fed. Cir. 2005); *Moody v. Principi*, 360 F.3d 1306, 1310 (Fed. Cir. 2004). Though we have not previously addressed the particular circumstances at issue here as to reopened claims, the *Clemons* lenient-claim-scope rule as applied to a pro se veteran's request to reopen falls squarely within the purview of this mandate. *Szemraj*, 357 F.3d at 1373 ("*Roberson* is not limited to its particular facts."). The government attempts to draw a meaningful distinction between "the duty to sympathetically read a pro se claimant's pleadings [including requests to reopen]" and the application of the *Clemons* rule to determine if a veteran's "claim necessarily encompasse[s] other mental health conditions," *see* Appellee's Br. at 17, but we see none. *Clemons* is but one application of the general lenity rule established by *Hodges*, *Roberson*, and their doctrinal progeny.

As we explained in *Shea v. Wilkie*, the scope of a pro se claimant's claim may be determined "indirectly through examination of evidence to which those documents themselves point when sympathetically read." 926 F.3d 1362, 1368 (Fed. Cir. 2019). *Clemons* provides further gloss as to what should inform the VA's review of a pro se veteran's claim filing—a veteran's reasonable expectations. This consideration stems directly from the regulation governing the VA's identification of and actions in response to requests for benefits. *See* 38 C.F.R. § 3.155(a)–(b) (2020) (indicating that a veteran's "desire to file" for benefits is a key component of filing a claim); § 3.155(d) (explaining that the VA, in acting upon a claim, considers all issues "reasonably within the scope" of the claim that may entitle the veteran to benefits); *see also Ingram v. Nicholson*, 21 Vet. App. 232, 256 (2007) ("[W]e note that the duty to sympathetically read must be based on reasonable expectations of a pro se claimant . . . ."). Thus, the proper inquiry for the VA in reviewing a pro se claimant's request to reopen filing is to determine what diagnoses, conditions, or illnesses can reasonably be understood as included in the request, this

inquiry informed by, but not limited to, looking to what the particular veteran could have reasonably expected to have included in the filing of such a request and the evidence of record. *Lacoste v. Wilkie*, 775 F. App'x 1007, 1012 (Fed. Cir. 2019) (explaining the role of intent in determining what conditions should be considered within the scope of a claim). We emphasize that this inquiry does not require that the VA embark on a fishing expedition to explore any potential condition which the record may support as a basis for benefits, nor does the VA have to attempt to read the mind of the claimant; the VA need only explore those conditions which may be *reasonably* considered within the scope of the claim. *See Sellers v. Wilkie*, 965 F.3d 1328, 1338 (Fed. Cir. 2020) (holding that a veteran's claim must identify, "at least at a high level of generality," the sickness, disease, or injuries for which compensation is sought and that 38 C.F.R. § 3.159, that is, the VA's duty to assist in developing claims, only applies once the VA "comprehends the current condition [up]on which the claim is based").

A main concern raised by the government and by the Veterans Court with respect to applying the *Clemons* lenient-claim-scope rule to a request to reopen filing is that doing so "ignores important principles regarding the finality of decisions." Appellee's Br. at 16; *see also Murphy*, 2019 WL 1029407, at *5 ("[W]e must concern ourselves with preserving 'the finality of agency decisions . . . .'" (quoting *Clemons*, 23 Vet. App. at 8)). But we see no reason why applying the *Clemons* lenient-claim-scope rule, that is, that the VA must look to all possible diseases or injuries for which the veteran could have reasonably expected to have included in the filing, to a request to reopen in any way disrupts the finality of agency decisions. To the contrary, if the VA construes a request to reopen liberally under the guidance of *Roberson* and *Clemons* and determines that it refers to two distinct diseases or injuries, both of which have been previously subjects of final agency decisions, the

VA's only duty is to consider whether the claimant has presented new and material evidence as to both respective claims, as contemplated by 38 U.S.C. § 5108.[4] The government concedes that Congress has explicitly provided the new and material evidence standard as a limited exception to the rule of finality. Appellee's Br. at 15.

In sum, the *Clemons* lenient-claim-scope rule applies to requests to reopen and *Boggs* does not require otherwise. Additionally, we note that the Veterans Court has previously applied this same understanding. *See Radu v. Shinseki*, No. 08-2692, 2010 WL 2706225 (Vet. App. July 8, 2010). Utilizing the same reasoning we espouse today, the Veterans Court distinguished *Clemons* from *Boggs* in explaining how to construe Mr. Radu's request to reopen:

> In this case, the appellant concedes that the RO denied his claims for compensation for both hearing loss and tinnitus in 1977. Unlike Mr. Boggs, he is not arguing that he was not required to submit new and material evidence to reopen the RO's 1977 final decision regarding tinnitus. Rather, he contends that the scope of his 2002 reopened claim was broad enough to encompass both tinnitus and hearing loss. The substance of the appellant's argument goes to his intent when he filed his reopened claim in 2002. *Clemons*, 23 Vet. App. at 5 ('A claimant's intent in filing a claim is paramount to construing the breadth of the claim.'). *Boggs,* which is limited to the issue of determining when two claims have been decided on the same factual basis, is not

---

[4]    One other statutory exception exists to the finality of VA decisions—"the grounds of clear and unmistakable error." 38 U.S.C. § 5109A. The hypothetical scenario presented here assumes the absence of any claim from the veteran of clear and unmistakable error. *See Boggs*, 520 F.3d at 1334.

> helpful in determining the appellant's intent at the
> time he filed his reopened claim. Accordingly, the
> Secretary's reliance on *Boggs* is misplaced.

*Id.* at *8.[5]

Turning to the facts of Mr. Murphy's case, the proper consideration for the VA is whether, under *Clemons*, Mr. Murphy's request to reopen filing, i.e., the 2012 RTR, should be interpreted as reasonably encompassing a request to reopen his schizophrenia claim. The Veterans Court, in an alternative holding, explained that, after considering Mr. Murphy's expectations in filing the 2012 RTR, it was unconvinced "that he had reasonable expectations of reopening both the schizophrenia and PTSD claims, at least not in February 2012." *Murphy*, 2019 WL 1029407, at *5 (citation omitted). The Veterans Court noted in support of this conclusion that Mr. Murphy's PTSD and schizophrenia had been the subjects of at least five other agency final decisions, each treating the illnesses as separate potential bases for benefits. *Id.* In light of this history, the Veterans Court explained that Mr. Murphy demonstrated an understanding that the conditions would be addressed separately and, therefore, the VA's treatment of the conditions separately here was reasonable. *See id.* Because the Veterans Court applied the proper legal standard in

---

[5]    Similarly, the government conceded at oral argument that had Mr. Murphy filed a request to reopen that described that he was seeking reconsideration of his claims related to his mental health generally, the only reasonable reading would be that he was seeking to reopen both his PTSD and his schizophrenia claims. *See* Oral Arg. at 27:10–28:08. This demonstrates the exact reasoning of *Clemons*—when a veteran fails to delineate specifically the bounds of the claim in a filing, the VA has a duty, particularly for pro se veterans, to construe the filing liberally and in a pro-veteran manner.

reaching its alternative holding based on *Clemons*, we do not disturb this conclusion.[6]  Consequently, Mr. Murphy's request to reopen cannot be construed as seeking to reopen his claim for schizophrenia.  The Board, and the Veterans Court, thus properly determined that it lacked jurisdiction over Mr. Murphy's claim for schizophrenia because it was not before it.

## CONCLUSION

We have considered Mr. Murphy's remaining arguments and are unpersuaded.  On the basis of the Veterans Court alternative holding, we affirm.

## **AFFIRMED**

## COSTS

No costs.

---

[6] To be clear, we hold only that the Veterans Court applied the proper legal standard, i.e., *Clemons*, in reaching its decision in its alternative holding.  The issue of whether the *Clemons* inquiry is one of law, of fact, or a question of law and fact, has not been briefed by the parties and is not currently before the court.