# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 18-1017

THOMAS J. GRIMES, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided April 28, 2021)

*Glenn R. Bergmann*, of Bethesda, Maryland, for appellant.

*James M. Byrne,* General Counsel; *Mary Ann Flynn*, Chief Counsel; *James B. Cowden*, Deputy Chief Counsel; and *Joshua L. Wolinsky,* all of Washington, D.C., were on the brief for appellee.

Before BARTLEY, *Chief Judge*, and PIETSCH and JAQUITH, *Judges*.

BARTLEY, *Chief Judge*: Veteran Thomas J. Grimes appeals through counsel a December 18, 2017, Board of Veterans' Appeals (Board) decision (1) denying entitlement to an initial compensable disability evaluation for bilateral hearing loss; (2) remanding a claim for service connection for a sinus disability; and (3) referring to a VA regional office (RO) for initial development and adjudication a claim for service connection for hyperacusis.[1] Record (R.) at 2-10.[2] This appeal, over which the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a), was referred to a panel of the Court to address the interplay between VA's obligation under *Clemons v. Shinseki*, 23 Vet.App. 1 (2009), to broadly construe a claim consistent with a lay claimant's reasonable expectations and the general rule of *Ephraim v. Brown*, 82 F.3d 399 (Fed. Cir. 1996), *vacating* 5 Vet.App. 549 (1993), and *Boggs v. Peake*, 520 F.3d 1330 (Fed. Cir. 2008),

---

[1] "Hyperacusis" is "[a]bnormal or painful sensitiveness to noise." 1 J.E. SCHMIDT, ATTORNEYS' DICTIONARY OF MEDICINE & WORD FINDER H-224 (2019).

[2] Because the sinus disability and hyperacusis claims were remanded and referred, respectively, the Court lacks jurisdiction to review the merits of those claims at this time. *See Howard v. Gober*, 220 F.3d 1341, 1344 (Fed. Cir. 2000); *Breeden v. Principi*, 17 Vet.App. 475, 478 (2004) (per curiam order); *Link v. West*, 12 Vet.App. 39, 47 (1998); 38 C.F.R. § 20.1100(b) (2020). The Court, however, does have jurisdiction to consider those claims for the limited purpose of determining whether referral of the hyperacusis claim was appropriate. *See Young v. Shinseki*, 25 Vet.App. 201, 202-03 (2012) (en banc order).

that separately diagnosed conditions with distinct factual bases should ordinarily be treated as separate claims. We hold that these authorities are complementary and that, pursuant to *Clemons*, a claim for service connection may encompass a related condition that is initially referenced by the claimant but not diagnosed until later in the appeal stream, regardless of whether the claim is initially granted or denied by the RO. Accordingly, and for the reasons that follow, the Court will set aside the portion of the December 2017 Board decision denying entitlement to an initial compensable evaluation for bilateral hearing loss and remand that matter for further development, if necessary, and readjudication consistent with this decision. The Court will also modify the December 2017 Board decision to strike the Board's referral of service connection for hyperacusis and remand for the Board to adjudicate, in the first instance, entitlement to compensation for hyperacusis, as part of either the hearing loss or sinus disability claim over which it had jurisdiction.

## I. FACTS

Mr. Grimes served on active duty in the U.S. Air Force from May 1966 to May 1970. R. at 996. In July 2011, he filed a claim for service connection for "loss of hearing, ear aches, sinus pressure, tinnitus." R. at 822. The next month, he submitted a statement in support of claim (SSC) describing in-service exposure to jet engine noise with minimal hearing protection. R. at 789. He also asserted that his "jaw and sinus and hearing [were] never the same" after an in-service wisdom tooth extraction where a military dentist hammered and broke one of his teeth with a chisel. *Id*.; *see* R. at 726-27 (April 2012 SSC reiterating those contentions).

In April 2012, Mr. Grimes underwent a VA audiology examination. R. at 737-43. When asked to describe the functional impact of his hearing loss, the veteran stated: "I seem to have to turn things up more. Everyone wants to know why it's so loud. I really have to pay attention if someone is talking. I have to press the phone close to my ear for me to hear it." R. at 741. He also reported that his tinnitus disturbed sleep patterns and interfered with daily activities. R. at 743.

In October 2012, the RO contacted Mr. Grimes to clarify the scope of his claims. R. at 708. The report of contact reflects that the veteran "stated the only contentions he wants considered are: hearing loss, tinnitus, and aches, sinus pressure. He did not want any other conditions added. . . ." *Id*. That same day, the RO issued a rating decision granting service connection for

2

bilateral hearing loss and tinnitus and assigning noncompensable and 10% evaluations for those conditions, respectively. R. at 715-18. Although the rating decision did not discuss any other claim, the attached code sheet indicated that "[s]ervice connection for aches, sinus [was] denied," R. at 715, and the cover letter to the decision stated that "service connection couldn't be granted" for aches, sinus pressure, R. at 701.

Mr. Grimes filed a Notice of Disagreement (NOD) as to that decision the next month, arguing that his claims were "incomplete" or "not properly expressed." R. at 690. He described sinus pressure and ear pain since service and asserted that he was entitled to service connection for "sinus pressure/ear pressure blockage/and headaches" related to his duties as an aircraft mechanic and the in-service dental surgery. R. at 690-91.

In June 2013, an RO employee completed a Report of General Information that outlined the procedural history of the veteran's claims. R. at 682. According to that Report, Mr. Grimes filed a claim for hearing loss, ear aches, tinnitus, and a sinus condition in July 2011; he raised an "unclear claim of wisdom teeth jaw condition and sinus and tinnitus" in September 2012; he clarified that his claims included only service connection for hearing loss, tinnitus, and aches/sinus pressure in October 2012; the RO denied service connection for aches and sinus pressure that same month; and he filed a "new claim for headaches and ear aches and ear blockage as secondary to non-service[-]connected aches, sinus pressure due to wisdom teeth removal in service" in November 2012. *Id*. The Report directed the RO to open a new claim for secondary service connection for headaches, ear aches, and ear blockage and to send the veteran a clarification letter "letting him know the only condition currently on appeal is service connection for aches, sinus pressure." *Id*.

In September 2013, the RO issued a Statement of the Case (SOC) continuing the noncompensable evaluation for bilateral hearing loss and the denial of service connection for aches, sinus pressure. R. at 651-73. Later that month, Mr. Grimes filed a Substantive Appeal of those claims, once again asserting that he suffered from "pain and disability from [his] service in the military," particularly the in-service dental surgery and exposure to jet-engine noise. R. at 632-33. He also submitted a separate SSC that same day explaining that the military surgeon who extracted his wisdom teeth struck one of his teeth with a hammer and chisel 30 times, ultimately driving it "up into [the] sinus area" before it broke in half. R. at 639. The veteran once again

attributed his "sinus pressure blocks[,] headaches, and [] bad hearing" to that incident and in-service noise exposure. R. at 638.

In October 2013, the RO issued a rating decision denying service connection for ear aches/blockage and headaches. R. at 559-63. The record does not reflect that the veteran took any action with respect to that decision.

More than one year later, in December 2015, Mr. Grimes submitted another application for service connection for tinnitus, hearing loss, and residuals of an ear cyst, along with an SSC reiterating his in-service acoustic trauma. R. at 525-37. He also stated that hearing loss caused difficulty communicating with his children, prevented him from hearing the television unless it was turned up very loud, and "impact[ed his] social life." R. at 525. At a January 2016 VA audiology examination, the veteran reported that his hearing loss caused difficulty communicating and his tinnitus was a distraction. R. at 456, 458.

The RO issued a rating decision in February 2016 continuing to deny higher evaluations for hearing loss and tinnitus and denying service connection for residuals of an ear cyst. R. at 444-48.

The next month, the veteran submitted an SSC asserting that his hearing loss had worsened. R. at 422. He explained that a private physician had recently diagnosed him with hyperacusis, "meaning hearing trouble and pain in noisy areas" and that "[b]ackground noise is greatly amplified to where [he] cannot hear properly and sometimes not at all." *Id*. He attached to the SSC (1) a VA audiology record reflecting complaints of hypersensitivity to loud noises and indicating that the audiologist had counseled him on how tinnitus and hyperacusis are "symptoms associated with a damaged auditory system," R. at 410; (2) an internet article about hyperacusis, which contained underlined passages noting that hyperacusis "can often lead to pain and discomfort," impede daily functioning, and cause depression, R. at 415; and (3) a typed letter alleging that VA had misdiagnosed his hearing problems and that his hyperacusis caused him to remove himself from noisy areas, R. at 395. Mr. Grimes underwent another VA audiology examination in April 2016, at which time he reported functional impairment including difficulty watching television, ear pain, and low tolerance to loud sounds. R. at 145-46.

In June 2016, the RO issued a rating decision continuing the noncompensable evaluation for bilateral hearing loss. R. at 108-12. The veteran challenged that decision in August 2016, asserting that he has hyperacusis, "a condition characterized by an increased sensitivity to certain

4

frequency and volume ranges of sound that is related to exposure to loud acoustic trauma." R. at 79.

Mr. Grimes was afforded a Board hearing in October 2016. R. at 36-64. At the outset of the hearing, the presiding Board member stated that the issues on appeal included entitlement to an increased evaluation for bilateral hearing loss and service connection for a sinus disability. R. at 37. The veteran's then-representative explained that Mr. Grimes's hyperacusis resulted in pain and discomfort from everyday noises like car engines, running faucets, humming refrigerators, and raking leaves. R. at 40. The Board member asked if the veteran was trying to get the pain from hyperacusis compensated as part of the instant appeal and the representative responded that he was. R. at 41-42. The Board member noted that it did not appear that VA had addressed hyperacusis yet, R. at 44, and that further development might be necessary to better understand its relationship, if any, to his hearing loss, tinnitus, and service, R. at 46, 50-52. Following the hearing, in July 2017, Mr. Grimes submitted a VA physician's opinion that the veteran's hearing loss was caused by in-service exposure to jet engine noise and that "his tinnitus and hyperacusis are the results or side effects of this damage." R. at 22.

In December 2017, the Board issued the decision currently on appeal, which denied a compensable evaluation for bilateral hearing loss; remanded for further development a claim for a sinus disability characterized by sinus pressure, headaches, earaches, and ear blockage related to in-service dental trauma and/or removal of an ear cyst; and referred for initial development and adjudication a claim for service connection for hyperacusis. R. at 2-10. This appeal followed.

## II. GOVERNING LAW & STANDARD OF REVIEW

The primary issue in this case is whether the veteran's July 2011 claims and ensuing appeals included entitlement to disability compensation for hyperacusis. As relevant here, VA has a duty to "give a sympathetic reading to the veteran's filings by 'determin[ing] all potential claims raised by the evidence, applying all relevant laws and regulations.'" *Szemraj v. Principi*, 357 F.3d 1370, 1373 (Fed. Cir. 2004) (alteration in original) (citing *Roberson v. Principi*, 251 F.3d 1378, 1384 (Fed. Cir. 2001)). This includes "investigat[ing] the reasonably apparent and potential causes of the veteran's condition and theories of service connection that are reasonably raised by the record or raised by a sympathetic reading of the claimant's filing." *DeLisio v. Shinseki*, 25 Vet.App. 45, 53 (2011); *see Ephraim*, 5 Vet.App. at 553 (Steinberg, J., dissenting) (stating that VA is "required

5

to consider the veteran's entitlement, on any basis consistent with the claim, to any benefit which could flow from a determination of service connection and to which entitlement is reasonably raised on the record").

Generally, "when a veteran has two diagnoses with separate factual bases, these diagnoses should be treated as two separate claims." *Murphy v. Wilkie*, 983 F.3d 1313, 1318 (Fed. Cir. 2020) (citing *Boggs*, 520 F.3d at 1336; *see Ephraim*, 82 F.3d at 401-02). However, a claim for service connection may be expanded beyond a veteran's lay description of a disability to include any disability "that may reasonably be encompassed by several factors including: the claimant's description of the claim; the symptoms the claimant describes; and the information the claimant submits or that the Secretary obtains in support of the claim." *Clemons*, 23 Vet.App. at 5. "[T]he claimant's intent in filing a claim is paramount to construing its breadth." *Id*. To effectuate that intent, "VA shall afford lenity to a veteran's filings that fail to enumerate precisely the disabilities included within the bounds of a claim," which "is best accomplished by looking to the veteran's reasonable expectations in filing the claim and the evidence developed in processing that claim." *Murphy*, 983 F.3d at 1318. "[T]he fact that the [claimant] may be wrong about the nature of his [or her] condition does not relieve the Secretary of his duty to properly adjudicate the claim." *Clemons*, 23 Vet.App. at 6.

The Court has jurisdiction to review the Board's jurisdictional determinations, *Skaar v. Wilkie*, 33 Vet.App. 127, 132 (2020), including whether it was appropriate for the Board to refer "another part (or condition) or theory in support of [a denied] claim" over which the Court otherwise has jurisdiction, *Young*, 25 Vet.App. at 202. Although "the Court exercises de novo review over Board determinations that are critical to its jurisdiction," *Evans v. Shinseki*, 25 Vet.App. 7, 10 (2011). the Court reviews the Board's factual findings regarding the scope of a claim for clear error, *Criswell v. Nicholson*, 20 Vet.App. 501, 504 (2006). "A factual finding 'is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Hersey v. Derwinski*, 2 Vet.App. 91, 94 (1992) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

## III. ANALYSIS

Mr. Grimes first argues that the Board erred in referring, rather than adjudicating or remanding, the issue of entitlement to disability compensation for hyperacusis. Specifically, he asserts that his July 2011 claims for service connection were broad enough to encompass hyperacusis, as he described hearing problems and ear pain that he attributed to in-service acoustic trauma or dental surgery, and that his appeal of the October 2012 rating decision encompassed compensation for hyperacusis, even though he did not know the precise medical name for that condition at those times. He argues that the RO erred in narrowing his appeal to exclude compensation for hyperacusis in violation of the sympathetic claim-construction principles outlined in *Clemons*, and that the Board in turn erred in finding that it did not have jurisdiction over that issue in the instant appeal. Appellant's Brief (Br.) at 12-15; Reply Br. at 1-7.

The Secretary disputes these contentions and urges the Court to affirm the Board's referral because it properly determined that the veteran's request for service connection for hyperacusis was jurisdictionally separate from the bilateral hearing loss and sinus disability claims that were on appeal. In support of this position, the Secretary points out that the veteran was not diagnosed with hyperacusis and did not notify VA of this diagnosis until 2016, well after he filed the original claims in July 2011 and the jurisdiction-conferring NOD in November 2012. He therefore asserts that, rather than *Clemons*, the appeal is controlled by *Ephraim* and *Boggs*, which he describes as establishing a rule that separate diagnoses represent separate claims. Secretary's Br. at 12-20.

The Court agrees with Mr. Grimes that the Board erred in treating his request for compensation for hyperacusis as a jurisdictionally separate matter from his appealed bilateral hearing loss and sinus disability claims. When viewed sympathetically, the veteran's filings and actions since July 2011 regarding his hearing problems and "ear aches" related to in-service noise exposure and dental surgery reflect his intent to seek compensation for hyperacusis both as part of his original claims for service connection and the ensuing appeal of those claims.

To wit, Mr. Grimes specified in his July 2011 application for VA benefits that he was seeking disability compensation for "ear aches," as well as hearing loss, sinus pressure, and tinnitus, R. at 822, and he asserted in his August 2011 SSC that he believed that those disabilities were related to either in-service noise exposure or dental surgery, R. at 789. When the RO contacted him in October 2012 to clarify the scope of his claims, he again stated that he was seeking compensation for hearing problems, "aches," and sinus pressure. R. at 708. In November

2012, one month after the RO granted service connection for bilateral hearing loss and tinnitus and denied service connection for "aches, sinus," R. at 715, the veteran filed an NOD arguing that the claims addressed by the RO were "incomplete" or "not properly expressed" and that he was entitled to additional compensation for sinus and ear problems related to his duties as an aircraft mechanic or the botched dental surgery in service, R. at 690-91. Following the September 2013 SOC continuing the prior hearing loss evaluation and denial of service connection for "aches, sinus pressure," Mr. Grimes filed (1) a Substantive Appeal reiterating that he continued to experience "pain and disability from [his] service in the military," particularly the in-service dental surgery and exposure to jet-engine noise, R. at 632-33; and (2) an SSC that attributed his sinus and hearing problems to those incidents, R. at 638. Then, in March 2016, while his appeal was pending before the Board, the veteran told VA that he had recently been diagnosed with hyperacusis, and he submitted evidence explaining that hyperacusis was "associated with a damaged auditory system" and describing how the condition can cause pain and functional impairment. R. at 395, 410, 415, 422. The veteran argued that VA had misdiagnosed his hearing loss problems all along. R. at 395. And in subsequent communications with VA regarding his service-connected bilateral hearing loss, the veteran asserted that hyperacusis was "related to exposure to loud acoustic trauma" like jet engine noise, R. at 79, and testified that hyperacusis caused pain and discomfort from everyday noises, R. at 40.

When the foregoing filings and actions are sympathetically read in light of his later diagnosis of hyperacusis (i.e., painful, hypersensitive hearing), it is apparent that Mr. Grimes intended for his original claims to encompass hyperacusis, that he timely and consistently disagreed with VA's narrow construction of his claims and treatment of "ear aches" as a separate condition unrelated to his service-connected hearing problems, and that he intended his appeal to the Board to include entitlement to compensation for hyperacusis, either as part of the properly challenged evaluation for bilateral hearing loss or denial of service connection for "aches, sinus disability." *See Murphy*, 983 F.3d at 1318; *Clemons*, 23 Vet.App. at 5 (holding that VA "should construe a claim based on the reasonable expectations of the non-expert, self-represented claimant and the evidence developed in processing that claim"). Like the veteran in *Clemons*, Mr. Grimes "did not file a claim to receive benefits only for a particular diagnosis, but for the affliction his . . . condition . . . causes him"—in this case, hearing problems that included hyperacusis. 23 Vet.App. at 5. Consequently, the Court concludes that the Board clearly erred in finding that Mr. Grimes's

initial claims and ensuing appeals did not encompass the issue of entitlement to compensation for hyperacusis. *See Criswell*, 20 Vet.App. at 504. And because that issue was properly before the Board in the decision currently on appeal, the Court also concludes that the Board erred in referring, rather than adjudicating or remanding, entitlement to compensation for hyperacusis. *See Young*, 25 Vet.App. at 203 (holding that "referral of a matter is appropriate only when the Board lacks jurisdiction over the matter being referred" (citing *Godfrey v. Brown*, 7 Vet.App. 398, 410 (1995))).

Contrary to the Secretary's contentions, Secretary's Br. at 12-20, neither the RO's narrow reading of the November 2012 NOD that led to administrative bifurcation of the claim nor the veteran's subsequent diagnosis of hyperacusis compels a different result. Regarding the NOD, although the RO construed part of that filing as a "new claim for headaches and ear aches and ear blockage as secondary to non-service[-]connected aches, sinus pressure due to wisdom teeth removal in service," R. at 682, the RO was not permitted to narrow or limit the scope of the veteran's hyperacusis appeal through bifurcation in that manner. Once Mr. Grimes initiated an appeal that included entitlement to compensation for hyperacusis, the RO was prohibited from extinguishing that portion of the appeal by reclassifying it as a new claim and then denying it. *See Collaro v. West*, 136 F.3d 1304, 1309 (Fed. Cir. 1998) (explaining that, after a claimant files a broad NOD, he or she may "cut the rough stone of [the] NOD" to reveal the "radix of [the] issue that lay within," and VA may not foreclose an issue by characterizing it differently); *AB v. Brown*, 6 Vet.App. 35, 39 (1993) (holding that, when an NOD expresses general disagreement with a decision and does not explicitly narrow the scope of an appeal, the RO and the Board are "required to construe the appeal as an appeal for the maximum benefit allowed by law and regulation"). Rather, the RO was required to process the appealed issues, and any adverse RO decision stemming from the "new claim" for ear aches did not disrupt or otherwise supersede the pending appeal. *See Jones v. Shinseki*, 23 Vet.App. 122, 125 (2009) (holding that, "where [a] claim was placed into appellate status by virtue of an NOD, subsequent RO decisions cannot resolve the pending claim"), *aff'd*, 619 F.3d 1368 (Fed. Cir. 2010).

This is especially true where, as here, the veteran perfected his appeal to the Board *before* the RO issued its adverse decision on the "new claim." Because Mr. Grimes's bilateral hearing loss and sinus disability claims, including entitlement to compensation for hyperacusis, were perfected to the Board in September 2013, the RO's October 2013 decision could not have resolved

his hyperacusis appeal. *See Bailey v. Wilkie*, 33 Vet.App. 188, 204 (2021) (explaining that, when two related claims are proceeding before VA simultaneously—one before the RO and one before the Board—an RO decision does "not divest the Board of jurisdiction over the veteran's initial appeal"); *Warren v. McDonald*, 28 Vet.App. 214, 221 (2016) ("The decision of the lower adjudicative body, the RO, cannot finally decide an issue already on appeal to the Board, the higher administrative appellate body."). Thus, contrary to the Secretary's contention, Secretary's Br. at 17-18, the intervening RO denial of service connection for ear aches/blockage and headaches in October 2013 and the veteran's failure to appeal that decision does not affect the scope of the claims he filed in July 2011 or the appeal he initiated in November 2012 and perfected in September 2013.

Nor does the timing of the hyperacusis diagnosis affect the scope of the claim in the manner that the Secretary argues. Although he contends that VA did not err in treating the veteran's claimed ear aches as distinct from hyperacusis because he was not diagnosed with hyperacusis until after he filed the original claims and subsequent appeal, Secretary's Br. at 13-14 (citing *Ephraim*, 82 F.3d at 401-02), 16-17 (citing *Boggs*, 520 F.3d at 1336), the Court in *Clemons* addressed precisely this issue and clarified that, when a veteran seeks benefits for a specific condition and is then diagnosed with a different but potentially related condition while the claim is being processed, VA may not reflexively treat the different conditions as separate claims. 23 Vet.App. at 6; *see id*. at 4 (noting that "multiple medical diagnoses or diagnoses that differ from the claimed condition do not necessarily represent wholly separate claims").

In so holding, the Court in *Clemons* distinguished the facts of that case from those in *Ephraim* and *Boggs*—the cases that the Secretary now relies on to support his argument here—on the ground that *Ephraim* and *Boggs* involved new diagnoses made after final denials of prior claims for related conditions. Regarding *Boggs*, the Court stated:

> *Boggs* stands for the proposition that, if there is a final agency decision denying a claim based on a particular diagnosis, and subsequently a new and different diagnosis is submitted for VA's consideration, the second diagnosis must be considered factually distinct from the first and must be considered to relate to a separate claim.

*Id.* at 8. The Court explained that "*Boggs* did not state a general rule that each new diagnosis presented prior to a final agency decision pertains to an entirely separate claim" because such a rule "would actually work to a veteran's disadvantage" by "forc[ing] a veteran to continually file new claims as medical evidence is developed during his initial claim"; requiring VA "to process

10

additional claims with proper notice and procedural requirements, lengthening and delaying an already arduous process"; and "potentially . . . requir[ing] a veteran to accept a later effective date for diagnoses made later in the process." *Id.* The Court therefore concluded that, "by its own terms and rationale, *Boggs* is not applicable to, and does not inform us how to determine, the scope of a claim at the time the claim is filed." *Id.* at 7; *see Murphy*, 983 F.3d at 1318 (noting that, "while both *Boggs* and *Clemons* speak to claim scope," they "do not address the same inquiries"). The Court then distinguished *Ephraim* on the same basis, stating that, "[a]s with *Boggs*, in *Ephraim* there was a prior, final decision on one diagnosis based on competent medical evidence that justified separating the new diagnosis into a separate claim." *Clemons*, 23 Vet.App. at 9.

That distinction applies with equal force to this appeal. Because Mr. Grimes was diagnosed with hyperacusis during the processing of his original bilateral hearing loss and sinus disability claims, before any final decision was rendered on either claim, *Ephraim* and *Boggs* do not control; instead, *Clemons* obligated VA to sympathetically construe his original claims and appeal to include any issue reasonably encompassed therein. *See* 23 Vet.App. at 5-6; *see also Murphy*, 983 F.3d at 1320 (explaining that, to comply with the *Clemons* lenient-claim-scope rule, "VA must look to all possible diseases or injuries for which the veteran could have reasonably expected to have included in the filing"). As discussed above, such a sympathetic reading includes the issue of entitlement to compensation for hyperacusis.

In sum, although VA construed Mr. Grimes's references to hearing difficulties and "ear aches" related to in-service noise exposure and dental surgery as distinct from hyperacusis, the veteran has always considered those problems to be part of the same "constellation of ear problems" for which he has been seeking compensation since July 2011. Appellant's Br. at 12-13. Per *Clemons*, a review of the veteran's filings and actions since that time, as well as the evidence submitted and developed throughout the appeal, reveals his intent to pursue benefits for hyperacusis as part of his bilateral hearing loss and sinus disability claims and appeal. Because entitlement to compensation for hyperacusis was part of either the properly appealed bilateral hearing loss or sinus disability claim over which the Board had jurisdiction, the Board erred in referring the hyperacusis issue to the RO. *See Young*, 25 Vet.App. at 203. Accordingly, the Court will modify the Board decision to strike that referral and remand the issue to the Board for adjudication in the first instance. *See* 38 U.S.C. § 7252 (empowering this Court to modify a Board

11

decision "as appropriate"); *Boyd v. McDonald*, 27 Vet.App. 63, 78-79 (2014) (exercising the authority to modify a Board decision).

That leaves Mr. Grimes's remaining arguments regarding the Board's denial of an initial compensable evaluation for bilateral hearing loss. *See* Appellant's Br. at 15-21; Reply Br. at 6-10. One of those arguments is that the Board provided inadequate reasons or bases for not referring the claim for consideration of an extraschedular evaluation because the record evidence establishes that his hearing problems, including hyperacusis, constitute an exceptional disability picture not contemplated by his current, noncompensable hearing loss evaluation under 38 C.F.R. § 4.85, and cause marked interference with employment. *See* Appellant's Br. at 17-19; Reply Br. at 7-9. Specifically, he asserts that his hearing problems prevent him from wearing hearing aids and cause ear pain, social isolation, depression, and noise intolerance, and that the rating schedule does not expressly contemplate hyperacusis. Appellant's Br. at 18-19 (citing 24, 69, 145-46, 456, 741). The upshot of these assertions is that, if hyperacusis were a part of the bilateral hearing loss claim, the record would have raised the question of whether the rating schedule was adequate to evaluate the veteran's service-connected hearing loss and triggered the Board's duty to maximize benefits by exploring all schedular avenues for compensating the identified symptoms.[3] *See Long v. Wilkie*, 33 Vet.App. 167, 174 (2020) (en banc), *appeal docketed sub nom. Long v. McDonough*, No. 21-1699 (Fed. Cir. Feb. 19, 2021); *Morgan v. Wilkie*, 31 Vet.App. 162, 164 (2019).

But, as explained above, although the record before the Court reflects that the issue of entitlement to compensation for hyperacusis was part of either his bilateral hearing loss or sinus disability claim and appeal, it is unclear specifically which of those claims it is a part of. *Compare, e.g.*, R. at 7 (Board's notation, in its summary of the evidence relevant to the bilateral hearing loss claim, that a VA audiologist in February 2016 counseled the veteran on hyperacusis), *with* R. at 8-9 (Board finding that the sinus disability claim included "earaches" claimed as due to "in-service dental treatment (wisdom tooth removal)"). That factual assessment is best left to the Board, which is the tribunal charged with "confronting the difficult questions of what current []condition actually exist[s]" and making "affirmative finding[s] as to the nature of the [claimant's] condition." *Clemons*, 23 Vet.App. at 6; *see Hensley v. West,* 212 F.3d 1255, 1263-64 (Fed. Cir. 2000) (noting

---

[3] The Court notes that the Board found that the veteran's complaints of "difficulty understanding conversational speech, especially in adverse listening environments; as well as difficulty with hearing the television" did not present an exceptional disability picture warranting extraschedular referral. R. at 8. However, it did not address the alleged symptoms and functional effects of hearing loss listed above.

that "appellate tribunals are not appropriate fora for initial fact finding" and that a remand is appropriate if the lower adjudicative body "failed to make findings of fact essential to the decision").

In other words, because the record presently before the Court is inadequate to determine whether the issue of entitlement to compensation for hyperacusis is part of the veteran's bilateral hearing loss or sinus disability claim and appeal, and because the Board's consideration of hyperacusis on remand may lead to an award of additional compensation for the veteran's service-connected bilateral hearing loss if hyperacusis is deemed to be part of that claim, it is premature for the Court to decide whether the Board erred in denying an initial compensable evaluation for bilateral hearing loss. Accordingly, the Court will also remand that issue to the Board for readjudication alongside the hyperacusis issue. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) (holding that remand is the appropriate remedy "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate").

On remand, Mr. Grimes is free to present to the Board the arguments from his brief, as well as any additional arguments and evidence relevant to his evaluation for bilateral hearing loss, in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). The Court reminds the Board that "[a] remand is meant to entail a critical examination of the justification for the [Board's] decision," *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991), and must be performed in an expeditious manner in accordance with 38 U.S.C. § 7112.

## IV. CONCLUSION

Upon consideration of the foregoing, the portion of the December 18, 2017, Board decision referring to the RO a claim for service connection for hyperacusis is MODIFIED to strike the referral, and the matter is REMANDED for the Board to adjudicate, in the first instance, entitlement to compensation for hyperacusis, as part of either the bilateral hearing loss or sinus disability claim over which it had jurisdiction. Moreover, the portion of the Board decision denying entitlement to an initial compensable evaluation for bilateral hearing loss is SET ASIDE and that matter is REMANDED for further development, if necessary, and readjudication consistent with this decision.

13