# United States Court of Appeals for the Federal Circuit

---

**KERRY E. SHEA,**
*Claimant-Appellant*

**v.**

**ROBERT WILKIE, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2018-1735

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 16-3479, Judge Amanda L. Meredith.

---

Decided: June 20, 2019

---

ISAAC CHAIM BELFER, Covington & Burling LLP, Washington, DC, argued for claimant-appellant. Also represented by JEFFREY HOWARD LERNER; RICHARD VALENTINE SPATARO, National Veterans Legal Services Program, Washington, DC.

MOLLIE LENORE FINNAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by JOSEPH H. HUNT, TARA K. HOGAN, ROBERT EDWARD KIRSCHMAN, JR.; MARTIE ADELMAN, BRIAN

D. GRIFFIN, DEREK SCADDEN, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

———————————

Before DYK, REYNA, and TARANTO, *Circuit Judges.*

TARANTO, *Circuit Judge.*

Kerry Shea served in the United States Air Force. In 2007, she filed an application with the Department of Veterans Affairs (VA) for disability benefits, expressly reciting physical injuries she sustained from an in-service truck accident. In 2008, she expressly sought disability benefits for a psychiatric condition connected to her military service. VA granted benefits for both physical and psychiatric conditions, but when Ms. Shea argued for a 2007 effective date for the psychiatric-disability benefits on the ground that her 2007 application presented an informal claim for psychiatric-disability benefits, VA disagreed. Specifically, VA's Board of Veterans' Appeals concluded that, under the regulation then governing informal claims, Ms. Shea's 2007 application did not adequately convey that she was seeking benefits for a psychiatric disability. The Court of Appeals for Veterans Claims (Veterans Court) affirmed. In this appeal by Ms. Shea, we conclude that the Veterans Court applied too restrictive a legal standard in reading her 2007 application. We vacate the Veterans Court's decision and remand for further proceedings.

I

A

Ms. Shea began serving in the Air Force in October 2006. Her pre-enlistment examination indicated a normal psychiatric condition. On January 19, 2007, while stationed at the Sheppard Air Force Base in Wichita Falls, Texas, Ms. Shea underwent an Air Force medical examination. The record of the examination states a diagnosis of

an adjustment disorder with anxiety and depressed mood, and it notes, among other things, that she found the Air Force harder than anticipated, was having difficulty in her classes, and had obtained professional help for anxiety and depression. Four days later, on January 23, 2007, Ms. Shea was struck by a large truck while on base. She was brought to the emergency room at the United Regional Health Care System, where several examinations showed that she had sustained various physical injuries, including a right pulmonary contusion, a transverse process fracture of L3, a left iliac wing fracture, and a right L3 acetabular fracture.

After being released from the emergency room, Ms. Shea was treated at several different facilities. On January 31, 2007, she entered HealthSouth Rehabilitation Hospital in Wichita Falls, Texas. Her medical records from that facility report anxiety, depression, and impaired memory, which were "currently exacerbated," and for which she was prescribed antidepressants. J.A. 171. She was discharged from rehabilitation on March 21, 2007.

On March 28, 2007, an Air Force medical evaluation board recommended that Ms. Shea be discharged from the military. The board reasoned that Ms. Shea's continued service was "not compatible with anxiety and depression and sleep disturbance[,] which puts her at risk for inattention and evident self harm," and that she might not recover from her physical injuries quickly enough to return to active duty. J.A. 186.

Near the beginning of April 2007, Ms. Shea was transferred to Dover Air Force Base, where her then-husband was stationed, to continue her treatment. Her medical records from her time at Dover, though primarily focused on her physical injuries, also list diagnoses of anxiety and depression and note that Ms. Shea was having some memory problems.

An Air Force physical evaluation board determined in May 2007 that Ms. Shea's pelvic fractures and transverse

process fracture were unfitting conditions that were compensable and ratable but that her adjustment disorder with depression and anxiety was not separately unfitting and was not compensable or ratable. On July 2, 2007, Ms. Shea was discharged from the Air Force because of her physical disabilities.

B

On October 19, 2007, Ms. Shea submitted a claim for disability benefits to VA. Her statement in support of the claim states, "Veteran is App[l]ying For se[r]vice connected disabilit[i]es," and adds, "Please see Attached VA Form 21-526." J.A. 254. The referred-to form, under the heading "What disability are you claiming?," lists four physical disabilities: "Pelvic Fractures and transverse process fracture of L3," "Shortness of breath," "Right and Left Pulmonary contu[s]ions," and "Pain chest." J.A. 245. Under the heading "When did your disability begin?," the form specifies "1/23/2007," the date of the truck accident, for each disability. *Id.* And for the address of the medical facility or doctor that treated Ms. Shea for each disability, the form lists the United Regional hospital for the first disability, the Wichita Falls rehabilitation hospital for the second, and the Dover facility for the last two. *Id.*[1]

After receiving the claim, VA sent Ms. Shea a letter regarding the agency's duty to assist veterans in obtaining evidence needed to substantiate their claims. In response to that letter, in December 2007, Ms. Shea submitted an additional statement in support of her claim, explaining that she had been treated by "United Regional Medical Ctr, Texas, Health South, Texas," another "VA Hospital," and

---

[1]    Ms. Shea appointed the American Legion as her representative. The parties accept that Ms. Shea should be treated as having filed her initial claim pro se.

two doctors in Dover. J.A. 290. She requested that VA "please obtain these records + grant benefits." *Id.*

In February 2008, the relevant VA regional office (RO) found that Ms. Shea's transverse process fracture, pelvic fracture, and rib fractures were connected to her service within the meaning of, *e.g.*, 38 U.S.C. § 1110 and 38 C.F.R. § 3.303. For the resulting benefits, the RO assigned an effective date of July 3, 2007, the day after Ms. Shea was discharged from service. Under a governing regulation, that was the proper effective date because her claim was filed within a year of her discharge. *See* 38 C.F.R. § 3.400(b)(2)(i) (2007).

Ms. Shea submitted a notice of disagreement with the RO's decision on July 7, 2008. She attached to that filing a letter asking that VA "please reconsider my disability rating" and explaining that, among other symptoms, "I also don't remember a lot of things I do, even the same day," "[m]y job had to print out special instructions for me to close out the computer step by step because I am unable to remember day to day," and "I live the accident daily now." J.A. 304. Eventually, VA found that letter (but no earlier filing) to be sufficient to present a claim for psychiatric-disability benefits.

The path to that finding was as follows. On September 9, 2008, Ms. Shea filed a claim in which she requested a determination of service connection for post-traumatic stress disorder (PTSD), noting that she was "now having problems." J.A. 306. She submitted a statement in support of that claim on October 15, 2008, clarifying that her asserted PTSD was secondary to her in-service truck accident.

The RO granted Ms. Shea's PTSD claim in February 2009 and assigned a 50% disability rating effective September 9, 2008, the date of her submission expressly requesting benefits for PTSD. On April 7, 2009, Ms. Shea submitted a notice of disagreement with the RO's decision,

challenging the effective date of her benefits for PTSD.  She explained that "[t]his case has been in an appea[l]s status since origi[]nal application of 7/07" (her discharge month) and asked "to have grant go back to that date."  J.A. 351.

Almost five years later, in March 2014, the Board rejected Ms. Shea's argument for an effective date earlier than September 9, 2008, for the PTSD benefits.  It found that there was no formal or informal claim, or written intent to file a claim, for PTSD until September 9, 2008.[2]  Ms. Shea appealed that decision to the Veterans Court.

In December 2015, Ms. Shea and VA jointly moved for a partial remand to the Board.  They agreed that, in determining whether Ms. Shea had filed a claim for PTSD before September 9, 2008, the Board had failed to consider Ms. Shea's July 7, 2008 statement that she was experiencing memory difficulties.  That statement, the parties agreed, was especially relevant "in light of subsequent medical evidence of record highlighting the symptom of memory loss before diagnosing her with PTSD and with an adjustment disorder with mixed anxiety and depressive mood."  J.A. 407.  The Veterans Court granted the motion and remanded the case to the Board.

The Board issued its decision on remand in July 2016.  It relied on 38 C.F.R. § 3.155, a regulation governing informal claims, which, in the version applicable to this matter, provided that "[a]ny communication or action, indicating an intent to apply for one or more benefits under the laws administered by [VA], . . . may be considered an informal claim" but that "[s]uch informal claim must identify the

---

[2]   The Board also remanded Ms. Shea's claims related to her lumbar spine, hip, and rib disabilities for a new VA examination.  Ms. Shea does not raise any issue regarding those disabilities in this appeal.

benefit sought." 38 C.F.R. § 3.155(a) (2007).[3] Under that standard, the Board found, Ms. Shea's July 7, 2008 statement describing her memory impairment constituted an informal claim for PTSD-disability benefits, since that statement could "reasonably be interpreted as an attempt to seek service connection for the disability that caused the symptoms described." J.A. 434. For that reason, the Board granted an effective date of July 7, 2008, for PTSD-disability benefits.

The Board refused to grant an even earlier effective date, however, finding that Ms. Shea had not presented an informal claim for PTSD-based benefits before July 7,

---

[3] There is no dispute that the 2007 version of § 3.155 applies to this appeal. VA amended this and related regulatory provisions in 2015 to require that claims be submitted on a specific form prescribed by VA, effectively ending the practice of "informal claims." *See* 38 C.F.R. §§ 3.155(d), 3.160(a) (2015); *Veterans Justice Grp., LLC v. Sec'y of Veterans Affairs*, 818 F.3d 1336, 1350–52 (Fed. Cir. 2016) (upholding new regulations). Under the amended regulation, if a claimant "indicates a desire to file for benefits" through a "communication or action" that "does not meet the standards of a complete claim," VA will consider that communication or action to be a "request for an application form for benefits," and VA will notify the claimant of the information necessary to complete the application form. *Id.* § 3.155(a) (2015). We express no view on the meaning of the new regulations, including the relationship between "identify[ing] the benefit sought" as required to raise an informal claim under the pre-2015 version of the regulation, *id.* § 3.155(a) (2007), and "identify[ing] the benefit sought" as required for a claim to be considered complete under the current version of the regulation, *id.* § 3.160(a)(3) (2015).

All further references to § 3.155 in this opinion are to the 2007 version, hereafter cited without the date.

2008. It reasoned that Ms. Shea's October 19, 2007 submission "does not identify that benefits are being sought for a psychiatric disability" under § 3.155(a) because it does not "refer to any psychiatric disability or symptom that can be attributed to a psychiatric disability." J.A. 434. The Board also determined that Ms. Shea's service and post-service treatment records, while stating psychiatric diagnoses, do not constitute an informal claim, reasoning that there was "no indication that [Ms. Shea] intended to file a claim for service connection for PTSD through the mere submission of medical records in support of her formal claims for service connection for non-psychiatric disabilities." *Id.*

Ms. Shea appealed the Board's denial of a July 3, 2007 (day after discharge) effective date to the Veterans Court, which affirmed the Board's decision in December 2017. The Veterans Court noted that Ms. Shea "plainly intended to apply for benefits in October 2007." J.A. 11. Nevertheless, it concluded that, in her October 2007 submission, she had not "adequately identified a psychiatric disability as one of the benefits sought" for purposes of stating an informal claim under § 3.155(a), since in that submission she "did not refer to any psychiatric conditions or symptoms attributable to her psychiatric condition." J.A. 10–11 (emphasis omitted). The court acknowledged Ms. Shea's argument that, "because she listed the date of her in-service accident as the date all her expressly claimed physical disabilities began, VA should have liberally construed that claim as including all residuals of the in-service accident," such as her psychiatric disability. J.A. 11–12. The court rejected that contention, stating that Ms. Shea was "rel[ying] on *the mere existence* of medical evidence of a psychiatric condition, in existence at the time of the formal claim for benefits for physical disabilities," which "alone does not raise an initial claim for benefits." J.A. 12 (citing *Criswell v. Nicholson*, 20 Vet. App. 501, 504 (2006)).

Ms. Shea timely appealed to this court. We have jurisdiction to consider legal issues raised by the Veterans Court's decision, such as whether the Veterans Court misinterpreted § 3.155(a) and related provisions and our previous decisions interpreting such provisions. *See* 38 U.S.C. § 7292(d)(1).

## II

## A

Under the applicable version of § 3.155(a), "any communication can qualify as an informal claim if it: (1) is in writing; (2) indicates an intent to apply for veterans' benefits; and (3) identifies the particular benefits sought." *Reeves v. Shinseki*, 682 F.3d 988, 993 (Fed. Cir. 2012); *see Rodriguez v. West*, 189 F.3d 1351, 1353–54 (Fed. Cir. 1999). Specifically, under § 3.155(a), "[s]uch informal claim must identify the benefit sought." The issue Ms. Shea presents for decision is whether the Veterans Court relied on too restrictive a legal standard when reviewing Ms. Shea's formal application for benefits to decide whether it should be read as including a claim for psychiatric-disability benefits.

We limit ourselves to that issue. The parties agree that the regulation's reference to "benefit sought" refers to the condition giving rise to the entitlement rather than the ultimate recovery, and we proceed on that basis without deciding the correctness of that assumption.

We have explained on several occasions that pro se filings must be read liberally to determine whether they satisfy § 3.155(a). Thus, in *Roberson v. Principi*, we held that the Veterans Court misinterpreted § 3.155(a) in concluding that a claimant had not raised a claim of total disability based on individual unemployability (TDIU), *see* 38 C.F.R. § 4.16, because he did not specifically request a finding of TDIU in his original claim, though he submitted evidence of a medical disability and of unemployability and asked for the highest rating possible. 251 F.3d 1378, 1384 (Fed.

Cir. 2001). "The VA must consider TDIU because, in order to develop a claim 'to its optimum' as mandated by *Hodge*, the VA must determine all potential claims raised by the evidence, applying all relevant laws and regulations, regardless of whether the claim is specifically labeled as a claim for TDIU." *Id.* (quoting *Hodge v. West*, 155 F.3d 1356, 1362 (Fed. Cir. 1998)).[4]

Several years later, in *Szemraj v. Principi*, we held that "*Roberson* is not limited to its particular facts." 357 F.3d 1370, 1373 (Fed. Cir. 2004). We explained that "*Roberson* requires, with respect to all pro se pleadings, that the VA give a sympathetic reading to the veteran's filings by 'determin[ing] all potential claims raised by the evidence, applying all relevant laws and regulations.'" *Id.* (quoting *Roberson*, 251 F.3d at 1384).

We reiterated that requirement in *Moody v. Principi*, 360 F.3d 1306 (Fed. Cir. 2004). The Board in that case determined that a claimant had not made a claim of secondary service connection for a psychiatric disorder because, among other reasons, his application for benefits "did not list a psychiatric disorder claimed to be related to prostatitis as a disease for which a claim was being made." *Id.* at 1309. We vacated the Veterans Court's affirmance of the Board's decision. What we identified as error was that the Board had "rigorously applied section 3.155(a)" and had not "determine[d] all potential claims raised by the evidence, applying all relevant laws and regulations." *Id.* at 1309–10 (quoting *Roberson*, 251 F.3d at 1384). We further held that "ambiguity" in a pro se filing that could be construed

---

[4]    *Roberson*'s reasoning did not expressly depend on the fact that the claimant there was unrepresented when he filed his initial claim, but we have subsequently characterized *Roberson* as an example of cases recognizing VA's "special obligation to read pro se filings liberally." *See Robinson v. Shinseki*, 557 F.3d 1355, 1358–59 (Fed. Cir. 2009).

as an informal claim "should be resolved in favor of the veteran." *Id.* at 1310.

In *Harris v. Shinseki*, we summarized *Roberson* and subsequent decisions as holding that "VA has a duty to fully develop any filing made by a *pro se* veteran by determining all potential claims raised by the evidence." 704 F.3d 946, 948 (Fed. Cir. 2013). On that basis we vacated the Veterans Court's decision because there was no "indication that the Veterans Court considered *Moody*, *Szemraj*, or *Roberson*, or that the court otherwise acknowledged its obligation to require that the Board generously construe the evidence in this case." *Id.*

The lesson of our cases is that, while a pro se claimant's "claim must identify the benefit sought," the identification need not be explicit in the claim-stating documents, but can also be found indirectly through examination of evidence to which those documents themselves point when sympathetically read. "[T]he Board is not obligated to consider 'all possible' substantive theories of recovery." *Robinson*, 557 F.3d at 1361; *see also Brokowski v. Shinseki*, 23 Vet. App. 79, 89 (2009) (stating that VA need not "conduct an unguided safari through the record to identify all conditions for which the veteran may possibly be able to assert entitlement to a claim for disability compensation"). But in deciding what disabilities, conditions, symptoms, or the like the claim-stating documents are sympathetically understood to be identifying, VA must look beyond the four corners of those documents when the documents themselves point elsewhere—here, to medical records. *See Roberson*, 251 F.3d at 1384 (requiring examination of evidence to interpret the claim); *Moody*, 360 F.3d at 1310 (same); *Szemraj*, 357 F.3d at 1373 (VA must "give a sympathetic reading to the veteran's filings").

Additional precedents reinforce the point. In *Comer v. Peake*, we determined that, although the claimant there "did not state specifically that he was entitled to an earlier

effective date for his TDIU award, his claim for an increased rating and an earlier effective date for his PTSD benefits, coupled with the persuasive and pervasive evidence in the record demonstrating his unemployability, was sufficient to raise the issue of his entitlement to an earlier effective date for his TDIU award as well." 552 F.3d 1362, 1368 (Fed. Cir. 2009). In *Robinson*, we held that, where the clamant raised an issue of direct service connection, "the evidence in the record must be reviewed to determine the scope of that claim," so that "the Board was obligated to consider direct as well as secondary service connection if raised by the record." 557 F.3d at 1362. We summarized our cases as follows: "*Roberson*, *Robinson*, and *Comer* thus require the Veterans Court to look at all of the evidence in the record to determine whether it supports related claims for service-connected disability even though the specific claim was not raised by the veteran." *Scott v. McDonald*, 789 F.3d 1375, 1381 (Fed. Cir. 2015). The standard, though not a bright-line one, reflects "the 'uniquely pro-claimant' character of the veterans' benefits system." *Harris*, 704 F.3d at 948.

B

Ms. Shea contends that the Veterans Court departed from the proper legal standard by considering her October 2007 application for benefits in isolation from, rather than in conjunction with, her other submissions and her service treatment records. She seeks a remand for application of the proper legal standard. We agree that a remand is warranted because the Veterans Court did not make clear that it was applying a legal standard in accordance with the above exposition.

Ms. Shea's central rationale for how her October 2007 application should be sympathetically read to include an informal claim for a psychiatric disability is straightforward. She observes that her October 2007 application (a) lists treatment by specific physicians at specific

facilities during specific periods, J.A. 245, and (b) refers to that itemization when stating that she is "applying for service connected disabilities," J.A. 254. She adds that her December 2007 statement in support of her claim reiterates that itemization and asks VA to "obtain these records [and] grant benefits." J.A. 290. And she cites to express references to psychiatric problems in medical records among those itemized, as summarized above.[5]

The Veterans Court's rejection of that theory rested on too restrictive an interpretation of § 3.155(a). The Veterans Court seemingly required that, to "identify the benefit sought" as required by the regulation, Ms. Shea's application itself had to contain words that themselves refer to a psychiatric disability or to mental-health symptoms, as opposed to language that points to records mentioning such a condition in a way that, sympathetically read, is properly understood as seeking benefits for such a condition. The Veterans Court's apparent requirement is contrary to the more flexible standard we draw from our precedents, as discussed above.

Although the Veterans Court stated that "medical records alone are not sufficient to raise an initial claim for benefits," J.A. 10, Ms. Shea has been explicit that she is not arguing otherwise. She relies on the claim-stating documents' concrete references to specified records. We thus do not have before us a question whether the § 3.155(a) standard can be met by the existence of a diagnosis in a claimant's medical records, without more, or in conjunction with

---

[5]    Given the medical-records references in her claim filings, we do not address the seemingly hypothetical contention that a claim for psychiatric-disability benefits would properly be found in those filings even if they did no more than state that her disabilities began on January 23, 2007 (which was the day of the truck accident, though the October and December 2007 filings do not say that).

a generalized request for all benefits that are supported in all medical records that VA would gather in the ordinary course. We hold only that, where a claimant's filings refer to specific medical records, and those records contain a reasonably ascertainable diagnosis of a disability, the claimant has raised an informal claim for that disability under § 3.155(a).

Because the Veterans Court did not articulate and apply the proper legal standard, we must vacate its decision. Ms. Shea has not asked us to hold that her application sufficiently invokes psychiatric-disability benefits as a matter of law. For that reason, we remand for application of this opinion to the facts. In doing so, we do not suggest that we see a genuine issue as to the sufficiency of Ms. Shea's application in this matter.

## III

For the foregoing reasons, we vacate the Veterans Court's decision and remand for further proceedings consistent with this opinion.

Costs awarded to Ms. Shea.

**VACATED AND REMANDED**