# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 20-4899

JIMMY C. BONDS, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued May 25, 2022)                                              Decided October 5, 2022)

*Sandra E. Booth*, of Columbus, Ohio, for the appellant.

*Omar Yousaf*, with whom *Richard A. Sauber*, General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Sarah W. Fusina*, Deputy Chief Counsel, all of Washington, D.C., were on the brief, for the appellee.

Before ALLEN, MEREDITH, and TOTH, *Judges*.

PER CURIAM. TOTH, *Judge*, filed a concurring opinion.

PER CURIAM: Navy veteran Jimmy C. Bonds challenges a Board of Veterans' Appeals (Board) decision that denied an effective date earlier than August 30, 2016, for compensation for diabetes and related residuals, special monthly compensation (SMC), and dependents' educational assistance (DEA).[1] He argues that a September 2013 filing alleging negligent care at a VA facility under 38 U.S.C. § 1151 (1151 claim) should be read to encompass his service-connection claim for diabetes and residuals so that the effective date for those service-connected conditions matches the September 2013 claim. The Board disagreed and denied the September 2013 effective date on the grounds that the relevant form did not identify any benefits sought beyond the 1151 claim. Specifically, the Board ruled that there was no legal support for the proposition that an "ambiguous claim may be for a benefit of a different type than what the claimant filed for." R. at 14. Under this rationale, the Board noted that "a claim for service connection does not encompass a claim for 38 U.S.C. § 1151 and vice versa." *Id*.

---

[1] The Board also remanded claims under 38 U.S.C. § 1151 for a right below the knee amputation and depression secondary to the amputation. We lack jurisdiction over remands and so do not address those claims. *See Breeden v. Principi*, 17 Vet.App. 475, 478 (2004).

The Secretary defends this ruling on appeal, arguing that an impenetrable barrier separates 1151 claims from service-connection claims brought under 38 U.S.C. §§ 1110 and 1131, such that the former can never encompass the latter. However, we need not assess this proposition as it sidesteps the salient issue here: whether, under then-extant regulations, the veteran presented an informal claim for service connection for diabetes. (VA issued new regulations in March 2015 that standardized how claims are filed and eliminated informal claims and so this question applies only to claims filed before issuance of the new regulations. *Compare* 38 C.F.R. § 3.1(p) (2013) *with* 38 C.F.R. § 3.155 (2022)).

Properly framed, the question here does not turn on the scope of a claim—that is, whether Mr. Bonds's claim under section 1151 can be read to incorporate a claim for service connection for diabetes—but assesses whether the September 2013 filing presents an informal claim for service connection for diabetes that is distinct from any claim under section 1151.

Ultimately, we cannot answer this question as the Board never made factual findings on the matter and we decline to do so in the first instance. Instead of determining whether Mr. Bonds filed an informal service-connection claim, it found that the presence of an 1151 claim precluded the possibility of a distinct claim under sections 1110 or 1131. This was error. The Board's duty to identify informal claims focuses on pleadings and is distinct from any assessment of whether the scope of a claim can be expanded by virtue of evidence developed during the course of a claim that presents an additional disability. In other words, the Board is not dispensed from its duty to identify informal claims merely because a veteran raises an 1151 claim; and here, it should have assessed whether Mr. Bonds also filed an informal claim for service connection. We remand for it to do so.

## I. BACKGROUND

Mr. Bonds began his service in the Navy in 1988 and was honorably discharged in 1995. Within one year of discharge, he was diagnosed with type 2 diabetes at a non-VA hospital. (This is relevant because diabetes is among the conditions for which a veteran can be presumed to be service connected if they are diagnosed within one year of leaving service. *See* 38 C.F.R. §§ 3.307(a)(3) (2022) (one year limit), 3.309(a) (list of qualifying conditions).) He began treatment with VA medical providers in 1999.

2

Mr. Bonds sought care from VA in 2011 after he stepped on a plug and developed a foot infection; the infection intensified and, later that year, VA physicians in Dayton, Ohio, conducted a below-the-knee amputation on his right leg. A treatment provider subsequently referred him for monitoring for depression.

On September 19, 2013, Mr. Bonds—proceeding without the assistance of counsel— requested compensation under 38 U.S.C. § 1151 for his amputation and compensation for depression as secondary to the amputation.[2] Section 1151 provides relief for disabilities that are proximately caused by negligent care on VA's part. As part of this claim, he submitted VA's standard claim form: VA Form 21-526EZ. The relevant section of that form requires veterans to list the disabilities they seek compensation for.

This is a snapshot of Mr. Bonds's claim form:

| 9. LIST THE DISABILITY(IES) YOU ARE CLAIMING (If applicable, identify whether a disability is due to a service connected disability, is due to confinement as a Prisoner of War, is due to exposure to Agent Orange, Asbestos, Mustard Gas, Ionizing Radiation, or Gulf War Environmental Hazards, or is related to benefits under 38 U S C 1151) EXAMPLES | | |
|---|---|---|
| Hearing loss, | Diabetes - Agent Orange (exposed 12/72, Da Nang) | Left knee, secondary to right knee |
| | | |
| right leg amputation (1151 claim) | | |
| depression and all mh conditions due to amputation | | |

R. at 13427.

Alongside the claim form, Mr. Bonds also submitted a statement in support of his claim. Excerpted here is the relevant section:

With this form I have enclosed form 21-22 electing the American Legion as the organization representing my claim and form 21-526ez stating I am claiming that my right leg amputation and mental health conditions caused by my amputation be treated as if service connected under Section 1151. I am filing an 1151 claim for these conditions due to the following facts:

In May of 2011 I sought treatment for a wound on my foot. I had stepped on the prong of a plug and developed a callus/sore. My VAMC records will then reflect that I had made multiple complaints of my foot and sought treatment. The fact that I was/am a diabetic, the wound should have been attended to more carefully. I developed an infection that was so bad it started to rot my foot. This led to my amputation in November of 2011. The VA care providers should have exercised a reasonable degree of care, knowing I was diabetic. If they had, then my leg would not have had to be amputated.

My health care was provided through the VAMC in Columbus Ohio and Dayton Ohio. Please review these records in support of my claim.

---

[2] The appellant's application is date stamped as received by VA on September 26, 2013.

3

R. at 13432.

The 1151 claim was initially denied but was later remanded and remained pending before VA when this case was argued. In June 2017, Mr. Bonds filed a formal claim seeking service connection for diabetes as well as related residuals. VA's regional office (RO) granted service connection and assigned an effective date of August 30, 2016—the date it received an earlier communication from Mr. Bonds indicating an intent to file a claim for service-connected diabetes and residuals. R. at 12. Mr. Bonds appealed the effective-date determination, arguing that his September 2013 claim for section 1151 benefits should be read to include a service-connection claim for diabetes. He cited extensive caselaw from this Court and the Federal Circuit addressing the scope of claims and VA's duty to read pro se filings sympathetically.

The Board denied an effective date earlier than August 30, 2016, for the initial grant of service connection for diabetes and related residuals, SMC, and DEA. It acknowledged the cases cited in the veteran's brief but asserted that they "do not support the proposition that the ambiguous claim may be for a benefit of a different type than what the claimant filed for." R. at 14. It cited *Anderson v. Principi*, 18 Vet.App. 371 (2004), for the proposition that "service connection does not encompass a claim for 38 U.S.C. § 1151 and vice versa." R. at 14. Under this rationale, a September 2013 effective date for diabetes and related benefits was not available because no such claim existed at the time—only the 1151 claim existed, as evidenced by the fact that Mr. Bonds "identified his claim as one under section 1151 from the first filing" and that he "remained steadfast in this assertion for nearly four years until the June 2017 claim for direct service connection." *Id.* This appeal followed.

## II. ANALYSIS

Generally, the effective date of an award for benefits will be the date VA receives the claim or the date entitlement arose, whichever is later. 38 U.S.C. § 5110(a) (establishing that, generally, "the effective date of an award . . . shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application"); 38 C.F.R. § 3.400 (2022).

On appeal, Mr. Bonds argues that the effective date for his diabetes and related benefits should be in September 2013—the date he filed his 1151 claim for compensation for a right leg amputation. He contends that the Board improperly limited the scope of his 1151 claim by confecting "an illusory distinction" between 1151 claims and service-connection claims that has

4

no basis in law and inappropriately limits the proposition that VA must sympathetically read pro se filings. Appellant's Br. at 7. He maintains that his case is identical to *DeLisio v. Shinseki*, 25 Vet.App. 45 (2011), which spells out various instances where a claim for a disability can encompass a claim for the causal condition of that disability; and, because his diabetes was found to have caused his amputation, *DeLisio* establishes that the diabetes claim is encompassed within his 2013 claim for a right leg amputation.

The Secretary argues that there is, essentially, an impenetrable barrier between 1151 claims and service-connection claims under 38 U.S.C. §§ 1110 and 1131. The Secretary vigorously defends the Board's ruling that *Anderson* precludes the possibility of a claim for service connection because it established that "[a] claim under section 1151 is not, properly speaking, a claim for service connection pursuant to section 1151." 18 Vet.App. at 376. Per *Anderson*, the Secretary contends, any factual similarity between this case and *DeLisio* is rendered irrelevant by the insuperable barrier that separates 1151 claims and service-connection claims, whereby one can never encompass the other.

VA regulations recognized both formal and informal claims at the time Mr. Bonds filed his claim in 2013. 38 C.F.R. § 3.1(p) (2013). In March 2015, VA changed its regulation to standardize how claims are filed and eliminated informal claims, *see* 38 C.F.R. § 3.155 ("How to file a claim"); thus, the analysis in this case pertains only to claims filed under the pre-March 2015 regulations.

Whether a filing raises an informal claim for benefits is normally a factual inquiry reviewed under the "clearly erroneous" standard, by which the Court can overturn the finding only if firmly convinced that the Board made a mistake. *Rouse v. McDonough*, 34 Vet.App. 43, 48 (2021). There are three "essential requirements" to any formal or informal claim: (1) an intent to apply for benefits, (2) an identification of the benefit sought, and (3) a communication in writing. *Brokowski v. Shinseki*, 23 Vet.App. 79, 84 (2009). The Court's inquiry in this case focuses on the second element: the identification of the benefit sought.

Although the Board must interpret a claimant's submissions broadly, it is "not required to conjure up issues that were not raised by the [claimant]." *Brannon v. West*, 12 Vet.App. 32, 35 (1998). However, a claimant is not required to identify benefits with technical precision, as it is VA's duty to evaluate whether "there is potential under the law to compensate an averred disability based on a sympathetic reading of the material in a pro se submission." *Ingram v. Nicholson*, 21 Vet.App. 232, 256-57 (2007). For this reason, even identifying a condition at a high level of

generality can suffice in some instances. *See Veterans Justice Group, LLC v. Secretary of Veterans Affairs*, 818 F.3d 1336, 1354 (Fed. Cir. 2016).

For example, in *Roberson v. Principi*, the Federal Circuit determined that, in addition to an expressly raised claim for a psychiatric condition, the veteran raised a TDIU claim by submitting evidence of unemployability and then asking for the highest rating possible. 251 F.3d 1378, 1384 (Fed. Cir. 2001). Several years later, *Szemraj v. Principi* confirmed that "*Roberson* is not limited to its particular facts" but "requires, with respect to all pro se pleadings, that the VA give a sympathetic reading to the veteran's filings by 'determin[ing] all potential claims raised by the evidence, applying all relevant laws and regulations.'" 357 F.3d 1370, 1373 (Fed. Cir. 2004) (quoting *Roberson*, 251 F.3d at 1384). Taken together, *Roberson* and *Szemraj* show that the assessment of whether a pro se pleading presents an informal claim is inherently factual in nature and can be distilled down to whether the filing identifies a benefit clearly enough to communicate an intent to apply for it. *Beverly v. Nicholson*, 19 Vet.App. 394, 405 (2005).

In a pair of recent decisions, *Shea v. Wilkie*, 926 F.3d 1362 (Fed. Cir. 2019), and *Sellers v. Wilkie*, 965 F.3d 1328 (Fed. Cir. 2020), the Federal Circuit set markers for determining whether a pro se filing sufficiently identifies the benefit sought. *Shea* recounted a series of previous decisions supporting the proposition that, although a pro se claimant must identify the benefit sought, "the identification need not be explicit in the claim-stating documents, but can be found indirectly through examination of evidence to which those documents themselves point when sympathetically read." 926 F.3d at 1368. Thus, in assessing the specific disabilities, conditions, and symptoms identified by claim-stating documents, "VA must look beyond the four corners of those documents when the documents themselves point elsewhere"—there, to medical records. *Id*. at 1369. Ultimately, the Federal Circuit held that requiring a claim-stating document to contain specific words referring to a psychiatric disability or mental health symptoms constituted "too restrictive an interpretation" of the phrase "'identify the benefit sought.'" *Id*. at 1370 (quoting 38 C.F.R. § 3.155(a) (2007)).

Eschewing strict formalism, the Federal Circuit applied a "flexible standard" in which a claimant can identify a benefit sought by using "language that points to records mentioning such a condition in a way that, sympathetically read, is properly understood as seeking benefits for such a condition." *Id*. Using this flexible standard, the Federal Circuit held that, "where a claimant's

filings refer to specific medical records, and those records contain a reasonably ascertainable diagnosis of a disability, the claimant has raised an informal claim for that disability." *Id.*

But *Shea*'s flexible standard is not boundless, as evidenced by the Federal Circuit's follow-on ruling in *Sellers*. That case addressed whether a pro se claimant who, in the claim-stating document, expressly sought benefits for leg, back, ear, and finger conditions also sufficiently identified benefits for a depressive disorder where he did not expressly mention the condition but merely requested service connection "for disabilities occurring during active duty service." *Sellers*, 965 F.3d at 1330. The veteran in *Sellers* argued that the language in a pro se filing should be read sympathetically to require VA to "grant all possible benefits" on the grounds that VA possessed his service medical treatment records, which showed that he had received treatment for psychiatric conditions. *Id.* at 1332. *Sellers* rejected the proposition that a generalized statement to receive "all possible benefits" coupled with VA's possession of a claimant's medical records was sufficient to identify the benefit sought as every disability, condition, or symptom mentioned in a pro se claimant's medical records. *Id.* at 1338. Recognizing that the Secretary's duty to assist "is not untethered," the Federal Circuit held that the filing failed to identify a benefit for depression even "at a high level of generality." *Id.*

*Shea* and *Sellers* serve as guideposts when evaluating whether a pro se claimant has adequately identified the benefit sought. *Shea* establishes that claims must be read alongside referenced medical records so that a pro se claim that falls short of expressly identifying a benefit can still identify the benefit sought when it signals an intent to seek benefits for a condition readily identifiable in the cited medical records. In contrast, *Sellers* requires a measure of specificity between the claim-stating document and the condition identified in the medical records such that generalized statements of intent to receive "all possible benefits" fall short of identifying the benefit sought as including conditions noted in a claimant's medical records.

Following this precedent, we begin by examining the four corners of a potential claim-stating document. *Shea*, 926 F.3d at 1368. The nature of a claim-stating document will depend on when it was filed. At the time the appellant filed his September 2013 application, a claim could be either "a formal or informal communication." 38 C.F.R. § 3.1(p) (2013). As noted, per extant regulations in 2013, a communication can serve as an informal claim if it (1) is in writing; (2) indicates an intent to apply for veterans benefits; and (3) identifies the particular benefits sought. 38 C.F.R. § 3.155 (2013).

We read VA's contention that an 1151 claim can never include a claim for service connection as relating primarily to the scope of the claim. Reasoning that the nature of an 1151 claim and the type of development required to adjudicate it renders it fundamentally distinct from a service-connection claim, VA contends that the one could never envelop the other. Whether true or not, this proposition is not of immediate concern as it does not touch upon the Board's duty to assess every pro se filing for informal claims. Ultimately, it is incumbent on VA to identify all claims raised by the veteran's pro se filings, consistent with *Shea* and *Sellers*, before deciding the scope of each individually raised claim—that is, VA must identify the largest limbs of the tree before examining the smaller offshoots of each branch.

Here, the Board limited its analysis to noting that 1151 claims are distinct from service-connection claims without considering whether Mr. Bonds's 2013 filing raised an informal claim for service connection for diabetes in *addition to* his expressly raised 1151 claim. Although the Board acknowledged that the appellant "did identify as a diabetic" in that 2013 filing, R. at 12, the Board did not discuss whether that reference alone or in conjunction with the medical records identified in that document could constitute an informal claim. Importantly, the appellant asserts, and the record appears to reflect, that those medical records contain a diabetes diagnosis within one year of service, which would be relevant to potential eligibility for presumptive service connection. *See* R. at 13432 (explaining that he is diabetic and requesting that VA review his medical records from VA medical centers in Ohio), 13454-55 (Dayton VA medical center record appearing to reflect a history of diabetes since 1996); *see also* 38 C.F.R. § 3.307(a)(3) (2013). In short, the Board limited its analysis to the scope of the veteran's 1151 claim rather than sympathetically reading the entire 2013 claim-stating document and concurrent record evidence. Because this is a factual inquiry, we remand for the Board to decide, in the first instance, whether Mr. Bonds's September 2013 filing raised an informal service-connection claim for diabetes. *See Byron v. Shinseki*, 670 F.3d 1202, 1206 (Fed. Cir. 2012) ("When there are facts that remain to be found in the first instance, a remand is the proper course.").

To be clear, our holding is a narrow one. We take no position on the Board's assertion that *Anderson* and prior caselaw stand for the proposition that an 1151 claim cannot *encompass* an 1110 claim. Indeed, *Anderson* does not factor in determining whether Mr. Bonds filed a *separate*, informal claim for service connection for diabetes. Nor do we address whether an 1151 claim can encompass a service-connection claim based on the causal-chain rule in *DeLisio*. We hold only

that VA must determine the total number and type of claims raised in a claim-stating document and referenced evidence before addressing the scope of each individually raised claim. Moreover, even if a claim-stating document only explicitly identifies one claim, VA must search that document liberally for other less explicitly stated claims. *See Roberson*, 251 F.3d at 1384. Because the Court is remanding this matter to the Board for readjudication, Mr. Bonds can present his remaining arguments to the Board. *See Best v. Principi*, 15 Vet.App. 18, 20 (2001) (per curiam order). He may submit additional evidence and argument and has 90 days to do so from the date of VA's postremand notice. *See Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order); *see also Clark v. O'Rourke*, 30 Vet.App. 92, 97 (2018). The Board must consider any such additional evidence or argument submitted. *Kay v. Principi*, 16 Vet.App. 529, 534 (2002). The Board must also proceed expeditiously. 38 U.S.C. §§ 5109B, 7112.

Finally, Mr. Bonds notes that the Board failed to address his request for an earlier effective date for service connection for depression, which was also on appeal. Neither side devoted much energy to this issue; in fact, the Secretary never addressed it, still less contested it. The record is clear, however, that the December 2019 Supplemental Statement of the Case (SSOC) addresses the effective date for service connection for depression and that Mr. Bonds expressly referenced it in his form appealing his case to the Board. R. at 1153 (SSOC), 62 (VA Form 9); *see* R. at 1244-45 (Notice of Disagreement). The Board thus erred in failing to address this issue. *See Harper v. Wilkie*, 30 Vet.App. 356, 359 (2018) (reviewing de novo whether the Board had jurisdiction); *see also* 38 U.S.C. § 7105 (2012); *Buckley v. West*, 12 Vet.App. 76, 82-83 (1998). On remand, the Board must address whether an earlier effective date for service connection for depression is warranted.

### III. CONCLUSION

For the foregoing reasons, the Court VACATES and REMANDS the portion of the June 9, 2020, Board decision denying an effective date earlier than August 30, 2016, for service connection for diabetes, service connection for related residuals, an award of SMC, and an award of DEA. The Court REMANDS for adjudication in the first instance the matter of an earlier effective date for service connection for depression.

TOTH, *Judge,* concurring: Although our caselaw has in practice heeded the difference between the scope of a pleading and the scope of a claim, it has never expressly recognized the distinction and I believe it would be helpful to do so. I join the panel opinion in full and write separately only to highlight a somewhat obvious point—that the scope of a claim includes the pleadings but also extends to cover matters identified through evidence obtained over the development of the claim. As relevant here, this explains why we need not assess whether the scope of an 1151 claim extends to include a claim for service connection.

As I read them, cases such as *Roberson v. Principi*, 251 F.3d 1378, 1384 (Fed. Cir. 2001), *Szemrai v. Principi*, 357 F.3d 1373 (Fed. Cir. 2003), *Shea v. Wilkie*, 926 F.3d 1362 (Fed. Cir. 2019), and *Sellers v. Wilkie*, 965 F.3d 1328 (Fed. Cir. 2020) set out how to assess the scope of a pleading to determine whether it includes an informal claim for benefits. This inquiry centers on the language of the pleading and extends to various medical records to which the pleadings refer. *Shea*, 926 F.3d at 1369. Significantly, matters obtained during discovery generally do not factor in assessing the scope of a pleading.

By contrast, cases such as *Schroeder v. West,* 212 F.3d 1265 (Fed. Cir. 2000), *Robinson v. Peake*, 21 Vet.App. 545 (2008), *Clemons v. Shinseki*, 23 Vet.App. 1, 5 (2009), and *DeLisio v. Shinseki*, 25 Vet.App. 45 (2011), are useful for assessing the scope of a claim once the duty to assist has attached and evidentiary development has begun. In these cases, the scope of the claim includes not only issues raised in the pleadings but also the entire evidentiary record as the case develops over time. *DeLisio*, 25 Vet.App. at 53 ("Overall, the scope of the claim will be based on a sympathetic assessment of 'the claimant's description of the claim; the symptoms the claimant describes; and the information the claimant submits or that the Secretary obtains in support of the claim,' i.e. the information gathered upon investigation.") (quoting *Clemons*, 23 Vet.App. at 5).

Evidentiary development, then, is the crucial difference between assessing the scope of a claim versus the scope of a pleading. As *Sellers* observed, "the Secretary's duty to assist begins upon receipt" of a "legally sufficient" claim (i.e., a formal claim or an informal claim if filed before the March 2015 change in regulation) that identifies the benefit sought. 965 F.3d at 1338 (citing 38 C.F.R. § 3.159). VA regulations also recognize that evidentiary development can change the scope of a claim: "Once VA receives a complete claim, VA will adjudicate as part of the claim entitlement to any ancillary benefits that arise as a result of the adjudication decision." 38 C.F.R. § 3.155(d)(2). And, relatedly, the Board must address all issues reasonably raised by the record

during the course of the claim and "explore all legal theories, including those unknown to the veteran, by which a veteran might be awarded service connection for such disability." *Robinson*, 21 Vet.App. at 551.

Assessing the scope of a pleading is thus an antecedent consideration to evaluating whether the Secretary complied with the duty to assist in developing a claim or whether the Board failed to address an issue reasonably raised by the evidence of record. *DeLisio* tracks this sequence neatly: its central holding is that a pending claim for a specific disability can encompass a claim for the causal condition of that disability where the evidence developed during the case shows a connection to service for the causal disability. 25 Vet.App. at 53. In these cases, the fact that the claimant failed to plead the causal condition does not defeat the possibility of compensation for it as the scope of the claim expands to "reasonably encompass" the causal disability such that "no additional filing is necessary to initiate a claim for benefits for the causal disease or disability." *Id.* at 54.

Of course, had the claimant filed an informal claim for the causal benefit, it would stand alone as an independent claim and there would be no need to examine whether it is reasonably encompassed by another claim. This point is fairly obvious, but it explains why we need not address whether an 1151 claim can reasonably encompass a claim for service connection. The relevant issue is whether Mr. Bonds's 2013 statement in support of his claim amounts to an informal claim for benefits for diabetes.