NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**WANDA BECK,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2022-2083

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 20-1995, Judge Coral Wong Pietsch, Judge Scott Laurer, Judge William S. Greenberg.

---

Decided:  March 1, 2024

---

KENNETH M. CARPENTER, Law Offices of Carpenter Chartered, Topeka, KS, argued for claimant-appellant.

MEREDYTH COHEN HAVASY, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by BRIAN M. BOYNTON, AUGUSTUS JEFFREY GOLDEN, MARTIN F. HOCKEY, JR., PATRICIA M. MCCARTHY; BRIAN D. GRIFFIN, RICHARD STEPHEN HUBER,

Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

————————————

Before REYNA, TARANTO, and CHEN, *Circuit Judges.*

REYNA, *Circuit Judge.*

Appellant, Wanda Beck, on behalf of her late husband, Arthur T. Beck, appeals a decision of the U.S. Court of Appeals for Veterans Claims.[1] The Veterans Court affirmed the Board of Veterans' Appeals' denial of an earlier effective date for service connection for major depressive disorder. J.A. 1. For the reasons below, we dismiss this appeal for lack of jurisdiction.

BACKGROUND

I.    Mr. Beck's March 2005 pension claim

Mr. Beck served on active duty in the U.S. Army from June 1974 to May 1975. J.A. 35. In March 2005, Mr. Beck filed a VA Form 21–526, entitled "Application for Compensation and/or Pension," where Mr. Beck noted that "back inj[ury]" and "psy/alcohol" kept him from working (the "March 2005 pension claim"). J.A. 36–47, J.A. 44. Mr. Beck checked the box on the form noting he was applying for pension benefits only. J.A. 36. He did not check either of the other two boxes listed, which were labeled "Compensation" and "Compensation and Pension." J.A. 36.

In June 2005, the U.S. Department of Veterans Affairs ("VA") denied Mr. Beck's March 2005 pension claim. J.A. 137. In August 2005, Mr. Beck filed a Notice of Disagreement with the June 2005 VA decision and submitted

————————————

[1]    On November 20, 2023, we granted appellant's unopposed motion to substitute Wanda Beck for Arthur T. Beck. However, when referring to appellant in this opinion, we will refer to Mr. Beck.

additional medical records to the VA.  J.A. 145–150.  The records consisted of medical progress notes from the Coatesville VA Medical Center concerning Mr. Beck's care. J.A. 145–150.  One medical progress note dated April 1, 2005 (the "April 1, 2005, VA treatment note"), stated that Mr. Beck had physical altercations with military superiors during his time in service, including one incident in which a servicemember snuck up behind Mr. Beck and left him unconscious.  J.A. 149.  It is not clear from the record how Mr. Beck was rendered unconscious.  J.A. 149.

In October 2005, the VA notified Mr. Beck that his March 2005 pension claim remained denied.  J.A. 163. However, in March 2006, the VA switched course, granting Mr. Beck's March 2005 pension claim.  J.A. 48–49.

## II.    Mr. Beck's May 2007 Statement

On May 18, 2007, Mr. Beck submitted a "Statement in Support of Claim," where he noted that during his time in service, he fell down some stairs and hurt his right leg and lower back (the "May 2007 Statement").  J.A. 165.  He noted that he "was told [his] back and knee condition could be from [his] fall in the military."  J.A. 166.  He also noted that "I am in the [] Coatesville [VA Medical Center] from 5/8/07 to present."  J.A. 165.  There is no indication on the face of this document that this "statement" is related to any specific claim.

## III.    Mr. Beck's October 2013 compensation claim

On October 30, 2013, Mr. Beck filed a claim for compensation benefits for a "mental health condition," (the "October 2013 compensation claim").  J.A. 55.  In January 2015, the VA granted Mr. Beck's October 2013 compensation claim for major depressive disorder ("MDD"), effective December 12, 2013.  J.A. 56.  Mr. Beck appealed, arguing for entitlement to an earlier effective date.  J.A. 62.  In August 2016, the VA granted Mr. Beck an earlier effective

date of October 30, 2013, the date that Mr. Beck initially submitted his claim for compensation.  J.A. 63.

Mr. Beck appealed to the Board of Veterans' Appeals ("Board"), arguing for an earlier effective date of March 21, 2005, for his compensation claim for MDD.  J.A. 99.  Mr. Beck argued that a veteran's claim for pension benefits may be considered as a claim for compensation.  J.A. 101 (citing 36 C.F.R. § 3.151(a)).  Thus, according to Mr. Beck, his March 2005 pension claim also included a claim for compensation for MDD.  J.A. 101.  And because of this, Mr. Beck argued his effective date for his compensation claim for MDD should be March 21, 2005, not October 30, 2013.  J.A. 101.  Mr. Beck did not reference his May 2007 Statement in his appeal before the Board or argue that this May 2007 Statement should be considered a separate claim for compensation for MDD.  *See* J.A. 99–102, J.A. 115–117.

In June 2019, approximately five months before the Board issued its decision in Mr. Beck's appeal, this court issued *Shea v. Wilkie*, 926 F.3d 1362 (Fed. Cir. 2019).  In *Shea*, we explained that a veteran's claim "must identify the benefit sought."  926 F.3d at 1368.  However, where a veteran proceeds pro se, the veteran need not explicitly identify all relevant claim elements in his or her "claim-stating documents."  *Id.*  Rather, when deciding what disabilities the "claim" is understood to be identifying, the VA "must look beyond the four corners" of the claim-stating documents when those "documents themselves point elsewhere," such as to medical records.  *Id.* at 1369.  It is undisputed that Mr. Beck did not file a notice of supplemental authority to the Board concerning *Shea* before the Board issued its decision or raise any argument before the Board concerning this case.

In November 2019, the Board denied Mr. Beck's argument for an earlier effective date for his compensation claim for MDD.  J.A. 119, J.A. 126.  The Board did not discuss *Shea* in its decision.  *See* J.A. 124–126.  Additionally,

the Board recognized that the regulations provide that a claim for pension "*may* be considered" a claim for compensation under 38 C.F.R. § 3.151(a). J.A. 124 (emphasis in original). But the Board also noted that the regulation does not require that "*all* claims" be read as seeking both pension and compensation benefits. J.A. 124 (emphasis in original). The Board further explained that the law requires a claim to "evidence a belief in entitlement to compensation benefits" for a particular disability. J.A. 124 (citing *Stewart v. Brown,* 10 Vet. App. 15, 18–19 (1997)). According to the Board, the first identifiable claim for compensation benefits for any psychiatric disability was Mr. Beck's October 2013 compensation claim. J.A. 126. The Board also determined that Mr. Beck's claim dated March 2005 was for pension benefits only. J.A. 124–126.

Mr. Beck appealed to the U.S. Court of Veterans Claims ("Veterans Court"). Notably, Mr. Beck did not appeal the Board's finding that Mr. Beck's claim dated March 2005 was only for pension benefits explicitly. J.A. 4–5, J.A. 191–192. Rather, before the Veterans Court, Mr. Beck argued for the first time that his May 2007 Statement was a "claim" for compensation benefits for "depression." J.A. 187. According to Mr. Beck, his May 2007 "claim" identified his medical records from the Coatesville VA Medical Center from May 1 to May 18, 2007. J.A. 189. These medical records, Mr. Beck argued, identified his MDD and thus contained a reasonably ascertainable diagnosis of his current service-connected depression. J.A. 189. Mr. Beck further argued that under *Shea*, the Board was required to discuss and "fully weigh[]" his May 2007 "claim." J.A. 190. Thus, Mr. Beck argued, the Board's failure to consider *Shea* and his May 2007 "claim" was error.

Mr. Beck also argued for the first time that the Board erred when it failed to consider the April 1, 2005 VA treatment note. J.A. 191. According to Mr. Beck, this document evidenced his "psychiatric disability." J.A. 191.

The Veterans Court affirmed the Board's decision. J.A. 5. The Veterans Court exercised its discretion under the issue exhaustion doctrine to not address Mr. Beck's newly raised arguments concerning *Shea* and the alleged May 2007 claim. J.A. 4.

The Veterans Court also did not consider Mr. Beck's untimely argument concerning the April 1, 2005 VA treatment note under the issue exhaustion doctrine. J.A. 4. The Veterans Court explained that Mr. Beck failed to provide any reason for why the court should exercise discretion concerning this argument. J.A. 4. The Veterans Court also noted that Mr. Beck failed to explain the relevancy of the April 1, 2005 VA treatment note and that even if it were relevant, there needed to be a compensation claim for the VA to consider the treatment record along with and that there was not. J.A. 4 n.23. Specifically, the Veterans Court explained that the Board found that the March 2005 pension claim could not serve as a compensation claim and that Mr. Beck had not adequately challenged that finding before the Veterans Court. J.A. 5.

Mr. Beck moved for reconsideration, challenging the Veterans Court's failure to consider *Shea*. *See* J.A. 6–16. Mr. Beck did not discuss the Veterans Court's determination concerning the April 1, 2005 VA treatment note in his motion for reconsideration. *See* J.A. 6–16. The Veterans Court denied Mr. Beck's motion and entered judgment on June 1, 2022. J.A. 25–27.

Mr. Beck appeals the Veterans Court's determination concerning *Shea*, and by extension, the May 2007 Statement. Mr. Beck does not present any argument in his opening brief before this court concerning the April 1, 2005 VA treatment note. This argument is therefore forfeited. *Evans v. Bldg. Materials Corp. of Am.*, 858 F.3d 1377, 1382 (Fed. Cir. 2017) (finding argument "is too late" when not raised until the reply brief and oral argument). Indeed, Mr. Beck does not once explicitly discuss the April 1, 2005

VA treatment note in any briefing before this court. Additionally, Mr. Beck does not challenge on appeal any of the Veterans Court's underlying factual findings concerning the April 1, 2005 VA treatment note, *see* J.A. 4–5, nor do we have jurisdiction to review such factual findings. 38 U.S.C. § 7292(d)(2).

DISCUSSION

I

We have limited appellate jurisdiction over appeals from the Veterans Court. *Sullivan v. McDonald*, 815 F.3d 786, 788–89 (Fed. Cir. 2016). This court may review legal questions, including the validity of any statute or regulation or any interpretation thereof. 38 U.S.C. § 7292(c). This court may not, however, review factual determinations or application of law to fact, except to the extent an appeal presents a constitutional issue. *Id.* § 7292(d)(2).

II

Mr. Beck argues that the Veterans Court erred by expanding the application of issue exhaustion "in excess of what is required by law" when it declined to consider *Shea* and its impact on the Board's treatment of Mr. Beck's May 2007 Statement. Appellant Br. 5. Mr. Beck argues that the Veterans Court's error is like the Veterans Court's error that this court found in *Bozeman v. McDonald*, 814 F.3d 1354 (2016). *Id.* For the reasons discussed below, we dismiss Mr. Beck's appeal for lack of jurisdiction.

The Veterans Court may hear legal arguments raised for the first time concerning a claim that is properly before the court, but it is not compelled to do so in every instance. *Maggitt v. West,* 202 F.3d 1370, 1377 (Fed. Cir. 2000). "Because the decision to invoke the doctrine of issue exhaustion is a discretionary one, its application is largely a matter of application of law to fact, a question over which we lack jurisdiction." *Dickens v. McDonald*, 814 F.3d 1359, 1361 (Fed. Cir. 2016); *Bozeman*, 814 F.3d at 1357.

At bottom, Mr. Beck challenges the Veterans Court's application of the issue exhaustion doctrine, a challenge that squarely falls outside of our jurisdiction. *Dickens*, 814 F.3d at 1361; *Bozeman*, 814 F.3d at 1357. Here, the Veterans Court first determined that Mr. Beck's argument concerning *Shea* was untimely given that Mr. Beck had the opportunity to raise this issue before the Board and that Mr. Beck was represented by able counsel at the time. J.A. 4–5. Then, based on these fact findings, which we cannot disturb, 38 U.S.C. § 7292(d)(2), the Veterans Court declined to entertain Mr. Beck's argument that *Shea* required the Board to consider his May 2007 Statement as a potential claim for compensation. J.A. 4–5. Mr. Beck has not challenged any aspect of this determination that could be reasonably characterized as purely legal.

Mr. Beck, nonetheless, argues that the Veterans Court legally erred when it "required Mr. Beck to have raised his reasons and bases argument below **before** he could have known how and why the Board would determine that his claim should be denied." Appellant Br. 7 (emphasis in the original). In other words, Mr. Beck argues that it would have been impossible to raise before the Board any argument concerning the Board's error since such error had not yet happened. But Mr. Beck's argument misses the mark. Here, the issue is not Mr. Beck's lack of precognition of Board error. Rather, the issue is Mr. Beck's untimeliness. If Mr. Beck wanted to rely on *Shea*, Mr. Beck had the time and opportunity to present this legal argument before the Board. He did not do so. His choice came with a risk: that the Veterans Court would not consider his newly raised legal argument under the doctrine of issue exhaustion. *See Maggitt*, 202 F.3d at 1378. And as previously noted, we have no jurisdiction to review the Veterans Court's

application of issue exhaustion to the facts of a case. *Dickens*, 814 F.3d at 1361; *Bozeman*, 814 F.3d at 1357.[2]

Mr. Beck also argues that the Veterans Court's error in this case is the same legal error we found in *Bozeman*. Mr. Beck's reliance on *Bozeman* is misplaced. In *Bozeman*, we determined that the Veterans Court "erroneously expanded the legal definition of issue exhaustion to apply to a claimant's citation of additional record evidence in support of [the veteran's] previously raised claim [before the Board] for an earlier effective date." 814 F.3d at 1358. We then explained that "[t]he mere citation of evidence already contained in the record to further support *that claim* is not a new legal argument for purposes of issue exhaustion." *Id.* (emphasis added).

Unlike in *Bozeman*, Mr. Beck did not raise for the first time before the Veterans Court mere record citations in support of *already raised claims*. Rather, Mr. Beck raised for the first time before the Veterans Court a new claim, an alleged May 2007 claim for compensation. And for the first time before the Veterans Court, Mr. Beck argued for an earlier effective date for his MDD *based on this 2007 claim for compensation*. Prior to this, Mr. Beck had only argued before the VA and the Board that he was entitled to an earlier effective date for MDD *based on his March 2005*

---

2    The Veterans Court may want to consider a new legal argument on appeal. *See Maggitt*, 202 F.3d at 1378. For example, oftentimes, veterans may not obtain independent counsel until after the Board reaches its final decision. *Id.* Thus, the Veterans Court should consider such circumstances when deciding whether to apply the doctrine of issue exhaustion. *Id.* Here, however, able counsel represented Mr. Beck since May 2015, years before the Board issued its decision. J.A. 4. Before that, a veteran service organization represented Mr. Beck since March 2005. *See* Appellee Br. 2; J.A. 48–50, J.A. 56, J.A. 60.

*pension claim*. Mr. Beck's new legal argument concerning an alleged May 2007 compensation claim cannot be shoehorned into *Bozeman*'s narrow exception to the doctrine of issue exhaustion.

## CONCLUSION

We have fully considered Mr. Beck's remaining arguments but find them unpersuasive. The appeal is dismissed for lack of jurisdiction.

## **DISMISSED**

### COSTS

No costs.